**CHRISTINA HUMPHREY LAW, P.C.**
Christina A. Humphrey (SBN 226326)
Robert N. Fisher (SBN 302919)
1117 State Street
Santa Barbara, CA 93101
Telephone: (805) 618-2924
Facsimile: (805) 618-2939
Email: christina@chumphreylaw.com
Email: rob@chumphreylaw.com

**TOWER LEGAL GROUP, P.C.**
James A. Clark (SBN 278372)
Renee P. Ortega (SBN 283441)
11335 Gold Express Drive, Ste. 105
Gold River, CA 95670
Telephone: (916) 361-6009
Facsimile: (916) 361-6019
Email: james.clark@towerlegalgroup.com
Email: renee.parras@towerlegalgroup.com

[Attorneys for Plaintiffs]
*[Additional Counsel listed on following page]*

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

FERNANDO COPPEL, ELIZABETH FLORES, MIRIAM GARCIA, PABLO MARTINEZ, TYLER MITCHELL, MICHELI ORTEGA, JUDITH URIOSTEGUI, ELIZABETH USSELMAN, individually and as a representative of a Putative Class of Participants and Beneficiaries, on behalf of the SWBG, LLC 401(K) PLAN (FKA SEAWORLD PARKS AND ENTERTAINMENT 401(K) PLAN,

Plaintiffs,

v.

SEAWORLD PARKS & ENTERTAINMENT, INC. ("SEAWORLD"); SWBG ORLANDO CORPORATE OPERATIONS GROUP, LLC ("SWBG"); BOARD OF DIRECTORS OF SEAWORLD AND SWBG, INVESTMENT COMMITTEE OF SEAWORLD PARKS & ENTERTAINMENT 401(K) PLAN/ SWBG, LLC 401(K) PLAN; MARK G. SWANSON (CEO); ELIZABETH GULACSY (CFO); and DOES 1 through 50,

Defendants.

Case No. 3:21-cv-01430-RSH-DDL

**PLAINTIFFS' MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

PER CHAMBERS RULES, NO ORAL ARGUMENT UNLESS SEPARATELY ORDERED BY THE COURT

**Hearing Date:** December 6, 2023
**Judge:** Hon. Robert S. Huie
**Courtroom:** 3B (3rd Flr)

**THE SHARMAN LAW FIRM LLC**
Paul J. Sharman (Appearance Pro Hac Vice)
11175 Cicero Drive, Suite 100
Alpharetta, GA 30022
Telephone: (678) 242-5297
Facsimile: 678) 802-2129
Email: paul@sharman-law.com

*[Attorneys for Plaintiffs]*

-ii-

# **TABLE OF CONTENTS**

**Page(s)**

I.    INTRODUCTION…………………………………………………………1

II.    BACKGROUND ...............................................................................2

    A.    The Parties…………………………………………………….....2

        1.    The Named Plaintiffs and Proposed Class Representatives……………………………………….……2

        2.    Defendants were Fiduciaries of the Plan……........................3

    B.    The Plan and the Committee's Responsibilities……………………..3

    C.    The Class Claims…..…………………………………………4

    D.    The Proposed Class…………………………………………5

III.    ARGUMENT………………………………………………………..6

    A.    Congress Established that ERISA Breach of Fiduciary Duty Claims May be Brought as Representative Actions for Plan-Wide Relief………......................................................................6

    B.    Plaintiffs Meet the Requirement of Rule 23(a).........................7

        1.    Numerosity is Met……..…………………………….....8

        2.    Commonality is Met…………………………...….........9

        3.    Typicality is Met.………………………………….11

        4.    Adequacy is Met……………………………………13

            a.    Plaintiffs have no conflicts with class members and will vigorously prosecute this action………………………….14

            b.    Plaintiffs' counsel has no conflicts with the class, will vigorously prosecute this action on behalf of the class, and should be appointed class counsel………………….…..15

    C.    Plaintiffs Meet the Requirements of Rule 23(b)…………………..16

        1.    The Proposed class satisfies Rule 23(b)(1)(A)…..…………....17

        2.    The Proposed Class Also Meets Rule 23(b)(1)(B)………..........19

IV.    CONCLUSION……………………………………………..……...20

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

# TABLE OF AUTHORITIES

**Cases**

*Alcantar v. Hobart Serv.,* 800 F.3d 1047, 1052 (9th Cir. 2015) (citing Dukes, 564 U.S. at 359) ...................................................................................................... 9

*Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625, 626 n.20 (1997) .............. 16, 17

*Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, U.S. , 133 S.Ct. 1184 (2013) ........ 7

*Armstrong v. Davis*, 275 F.3d 849 (9th Cir. 2001) ...................................................... 8

*Beach v. JPMorgan Chase Bank, N.A.*, 2019 WL 2428631, at *8 ........................... 14

*Betts v. Reliable Collection Agency, Ltd.*, 659 F.2d 1000, 1005 (9th Cir. 1981) ........... 8

*Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975) ............................................. 7

*Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 593 (8th Cir. 2009) ........................ 7

*Circle Click Media LLC v. Regus Mgmt. Grp. LLC*, 2016 WL 1048046, at *9 (N.D. Cal. Mar. 11, 2016) ............................................................................................. 13

*Clark v. Duke Univ.*, 2019 WL 2588029, *3 (M.D.N.C. June 24, 2019) ................. 18

*Cummings v. Connell*, 316 F.3d 886, 896 (9th Cir. 2003). ...................................... 14

*Dilts v. Penske Logistics, LLC*, 267 F.R.D. 625, 632 (S.D. Cal. 2010) .................... 8

*Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir 2011) ........................ 11

*Foster v. Adams & Assocs., Inc.*, 2019 WL 4305538, at *7 (N.D. Cal. Sept. 11, 2019) ...................................................................................................................... 17

*Galvan v. KDI Distribution [sic] Inc.*, 2011 WL 5116585 (C.D. Cal. 2011) ........... 8

*In re Citigroup Pension Plan ERISA Litig.*, 241 F.R.D. 172, 179 (S.D.N.Y. 2006) . 17

*In re Hyundai and Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (en banc). ............................................................................................................... 7, 13

*In re Marsh ERISA Litig.*, 265 F.R.D. 128, 144 (S.D.N.Y. 2010) .......................... 19

*In re Northrop Grumman Corp. ERISA Litig.*, No. 06-6213-MMM, 2011 WL 3505264, at *15 (C.D. Cal. Mar. 29, 2011) .......................................................... 7

*In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 594 (3d Cir. 2009) .......... 6

*Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 111–12

(N.D. Cal. 2008) ..........................................................................7, 9, 12, 15, 17, 19

*Kleen Prod. LLC v. Int'l Paper Co.*, 831 F.3d 919, 929 (7th Cir. 2016) ................. 10

*Leber v. Citigroup 401(k) Plan Inv. Comm.,*323 F.R.D. 145, 164 (S.D.N.Y. 2017) 14

*Marshall v. Northrop Grumman Corp.*, No. 16-6794-AB, 2017 WL 6888281, at *9
    (C.D. Cal. Nov. 2, 2017) ...................................................................7, 9, 11, 12, 19

*Mass Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 142 (1985) .............................. 6

*Meyer v. Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012)..... 12

*Munro v. Univ. of S. Cal.*, No. 16-6191-VAP, 2019 WL 7842551, at *8 (C.D. Cal.
    Dec. 20, 2019) ....................................................................... 7, 9, 11, 12, 17, 19

*Northrop, supra,* 2011 WL 3505264, *14 ...............................................11, 12, 14, 14

*Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 833–34 (1999)........................................ 19

*Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014)................................................ 12

*Russell, supra,* 473 U.S. at 142 n.9. ........................................................................ 14

*Schering, supra,*589 F.3d at 596–97 ........................................................................ 10

*Shanehchian v. Macy's, Inc.*, 2011 WL 883659, *9 (S.D. Ohio Mar. 10, 2011) ....... 18

*Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 373 (1966)...................................... 14

*Tibble v. Edison Int'l*, No. 07-5359-SVW, 2009 WL 6764541, at *7 (C.D. Cal. June
    30, 2009)...............................................................................................................7

*Tussey v. ABB, Inc.*, 2012 WL 1113291, *11–13 (W.D. Mo. Mar. 31, 2012) ............ 18

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)........................................ 9

**Statutes**

29 U.S.C. § 1109(a) ............................................................................................6, 14

29 U.S.C. § 1132(a)(2)............................................................................................. 6

**Rules**

ERISA § 502(a)(2)........................................................................................6, 12, 19

Fed. R. Civ. P. 23(a)(3) ........................................................................................... 11

Fed. R. Civ. P. 23(b)(1)(A).................................................................................... 17

Fed. R. Civ. P. 23(b)(1)(A), (B)................................................................................1

Rule 23(a) .................................................................................................. 12

Rule 23(a)(2) .............................................................................................. 11

Rule 23(b)(1)(A) and b(1)(B) ..................................................................... 1

Rule 23(b)(1)(B) ........................................................................................ 20

PLAINTIFFS' MOTION FOR CLASS CERTIFICATION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF

Plaintiffs respectfully submit this memorandum of law in support of their Motion for Class Certification.

## I.   **INTRODUCTION**

Plaintiffs were employees of SeaWorld who participated in its 401(k) Plan during the Relevant Time Period of August 10, 2015 through and to a date of judgment.  They generally allege that Defendants breached their fiduciary duties to manage the Plan and oversee Plan service providers by causing the Plan to pay excessive service provider fees and selecting and/or maintaining high fee and underperforming funds.

As explained below, courts have concluded that suits seeking relief for breach of fiduciary duty under ERISA for mismanagement of a 401(k) Plan are the paradigmatic example of a class case because ERISA expressly authorizes representative claims to protect plan assets and because these claims are brought on behalf of thousands of participants, deal with a single course of conduct by the fiduciary defendants, define a single set of obligations for the fiduciary defendants in connection with the Plan and participants as a whole, and establish the rights and remedies for Plan participants as a group.

These are the precise circumstances that Rule 23(b)(1)(A) and b(1)(B) classes are designed for – the prevention of solo litigation that "would establish incompatible standards of conduct" for defendants, and/or that "as a practical matter, would be dispositive of the interests of the other [absent, would-be class] members."  Fed. R. Civ. P. 23(b)(1)(A), (B).

Here, Plaintiffs and the thousands of putative class were all Plan participants, their claims are all common and based on Defendants' alleged mismanagement of the Plan, which impacted them as a group.  This lawsuit will determine their rights and Defendants' obligations in one common fell swoop.

Because the Plan underwent changes in 2020, including the transition from one Plan recordkeeper, MassMutual, to another, Prudential, Plaintiffs also seek to

establish subclasses.  These subclasses are based on the recordkeeper that was in place when a class member was a participant in the Plan.  Additionally, because injunctive relief would only impact current Plan members, Plaintiffs seek to create a separate injunctive relief subclass.  Plaintiffs Coppel, Martinez, Mitchell, and Uriostegui are members of the proposed MassMutual subclass.  Plaintiff Usselman is a member of all three subclasses.

These subclasses also satisfy each of the Rule 23 factors because they also contain thousands of members and seek answers to common questions of whether Defendants breached their fiduciary duties to the Plan by paying excessive service provider fees and selecting or maintaining improper funds in the Plan.

## II.   BACKGROUND

### A. The Parties

#### 1.  The Named Plaintiffs and Proposed Class Representatives

Plaintiffs Fernando Coppel, Pablo Martinez, Tyler Mitchell, Judith Uriostegui, and Elizabeth Usselman are former employees of Defendant SeaWorld Parks & Entertainment, Inc who invested in SeaWorld's 401(k) Plan ("Plan," described further below).  (SAC ¶¶ 15, 18-19, 21-22)(Declarations of Coppel, Martinez, Mitchell, Uriostegui, and Usselman ¶¶2).  Plaintiff Usselman is still a participant in the Plan and in addition to other relief, also seeks injunctive relief on behalf of the class members. (Usselman Dec. ¶¶2-3).   Each one of the Plaintiffs invested in one or more of the funds at issue in this case. (*Id.*)

#### 2.  Defendants were Fiduciaries of the Plan[1]

Defendant SeaWorld Parks & Entertainment, Inc. ("SeaWorld") was the former sponsor and administrator of the Plan until 2016.  (SAC ¶ 24).  Defendant SWBG Orlando Corporate Operations Group, LLC ("SWBG") then became the current sponsor and administrator of the Plan.  (*Id.* ¶ 25).  ("The Employer is the Plan

---

[1] If any of the Defendants deny being a fiduciary, this is a question that can be decided on a class-wide basis.

1  Administrator…" and "[t]he Plan Administrator is the Named Fiduciary for the

2  Plan"). (Exhibit 1, 2010 Basic Plan Document and Adoption Agreement, ¶¶ 11.01

3  and 11.03)[2]

4       The Defendant Investment Committee (the "Committee"), appointed by the

5  Defendant Board of Directors, is a fiduciary to the Plan. (SAC ¶ 26) (Exhibit 3,

6  SWBG LLC 401(k) Plan Investment Committee Charter) It consists of

7  representatives from SWBG, including e.g., the Chief Financial Officer (CFO),

8  Director-Financial Reporting, Chief Human Resources Officer (CHRO), and

9  Controller. (*Id.*) Individual Defendants Mark G. Swanson and Elizabeth Gulacsy

10 are/were executives who were also members of the Committee during the relevant

11 time period. (SAC ¶ 28)

12 **B. The Plan and the Committee's Responsibilities**

13 The Plan is a defined contribution 26 U.S.C. section 401 ("401(k) plan")

14 established on March 1, 2010, pursuant to 29 U.S.C. sections §1002(2)(A) and

15 §1002(34) of ERISA. (SAC ¶ 5). The documents establishing and governing the Plan

16 are the same for all participants. (See Exhibits 1 and 2, 2010 Basic Plan Document

17 and SWBG, LLC 401(k) Plan). By 2021, the Plan had approximately $300 million in

18 assets and approximately 12,487 participants. (See Exhibit 6, Form 5500 (Part II, line

19 5 & Sch. H, Part I, line l) for Plan Year 2021 filed by SWBG, LLC with the

20 Department of Labor ("DOL")). Throughout the proposed class period, the Plan

21 provided putative class members a menu of approximately 26-29 investment options,[3]

22

23 ――――――――――――――――

23 [2] All Exhibits are attached to the Declaration of Christina A. Humphrey, submitted
   herewith.

24 [3] As noted in FN 1 of Defendant's Motion to Dismiss, ECF Doc. No. 29-1: "The Plan
   offered investment options via a group annuity contract. (Ex. C, 3/1/10 Mass-Mutual
25 Group Annuity Contract). The issuer of such arrangements (here, MassMutual)
   provides the investor (here, SeaWorld) with a universe of pooled investment options
26 from which to select a subset to offer to Plan participants. (See Ex. B at 214,
   MassMutual ASA, § 2.1 ("If the Plan's assets are invested through a group annuity
27 contract issued by Mass- Mutual, the Plan Sponsor acknowledges and agrees that
   MassMutual has established Investment Options that it makes available to plan
28 sponsors through the contract."); id. at Exhibit C (showing investment options

including a series of target date funds based on age, and most of which are being challenged in this lawsuit. (SAC ¶64; see also Exhibits 5 and 6, Forms 5500 2018 and 2021; Schedule H, Part IV, Line 4i)  The most expensive funds in the Plan, the American Century Target Date Funds, were the default investment for most of the putative class period and contained the bulk of the Plan's Assets. (Exhibit 7, SeaWorld Parks & Entertainment 401(k) Plan Design and *id*.)

The Investment Committee is governed by a 401(k) Plan Investment Committee Charter, which tasks it to perform fiduciary functions and duties related to the management and investment of plan assets. (See Exhibit 3).  The Committee is further bound by an Investment Policy Statement, which was created to enable the Committee in supervising, monitoring, and evaluating the investment of the Plan's assets. (See Exhibit 4).  The document contains investment guidelines for selection and monitoring of investment options and administrative costs to the Plan.

Throughout the proposed Class Period, the Plan Sponsor retained Alliant Insurance Services, as an investment advisor to the Plan.  (SAC ¶ 29)  Mass Mutual served as the recordkeeper for the Plan from its inception through approximately the end of 2019. (SAC ¶ 31)  Prudential Retirement Insurance and Annuity Company ("Prudential") then served as the recordkeeper for the Plan from 2020 until Empower Annuity Insurance Company of America ("Empower") bought Prudential in 2022. Empower now serves as the Plan's recordkeeper.  (*Id.*)

**C. The Class Claims**

The SAC alleges one single cause of action for Breach of Fiduciary Duty of Prudence.  Plaintiffs allege the Plan breached its fiduciary duty by:

a.  Offering and maintaining higher cost share classes when identical lower cost class shares were available and could have been offered to participants;

---

SeaWorld initially selected)). In short, the annuity product itself limited the investment options—and their share classes—from which SeaWorld could choose."

b.  Overpaying for Covered Service Providers by paying variable direct and indirect compensation fees through revenue sharing arrangements with the funds offered as investment options under the Plan, which exceeded costs incurred by plans of similar size with similar services;

c.  Imprudently choosing and retaining expensive mutual funds while less expensive index funds were available and could have been offered to participants;

d.  Selecting conflicted dual registered investment advisors and brokers who were incentivized to choose higher fee mutual funds because they received not only brokerage commissions from funds but insurance commissions for annuity products;

e.  Failing to engage in a competitive bidding process by submitting a Request for Proposal to multiple service providers including recordkeepers, shareholder service and financial advisers;

f.  Imprudently Maintaining the Plan's Investment in the MassMutual and Prudential Stable Value Options, when Lower Share Classes Exist and Other Investment Vendors Offered Superior Alternatives.  (SAC ¶¶ 8 and 177-240)

As a result of said breach, Plaintiffs are seeking a declaratory relief that Defendants breached their fiduciary duty to the Plan; a determination of the amount of losses to the Plan; an accounting; equitable disgorgement, surcharge, and restitution; monetary relief; and injunctive relief.

**D. The Proposed Class**

Plaintiffs seek certification of a class that includes all persons who are or were or may become entitled to benefits under the Plan during the relevant time period[1] and who do not have an adverse interest in this suit as follows:

All participants in or beneficiaries of the SeaWorld Parks and Entertainment 401(K) PLAN, and the SWBG, LLC 401(K) PLAN from

---

[1] A "participant" is an employee or former employee "who is or may become eligible to receive a benefit of any type from an employee benefit plan."  29 U.S.C. § 1002(7).  A "beneficiary" is, in turn, "a person designated by a participant, or by the terms of an employee benefit plan, who is or may become entitled to a benefit thereunder."  29 U.S.C. § 1002(8).

August 10, 2015, through the date of judgment, excluding Defendants and members of the Defendant Boards and Committees.

The Plaintiffs also propose the following sub-classes:

1. (MassMutual Sub-Class) All class members who participated in the Plan while Mass Mutual was the Plan's Recordkeeper.

2. (Prudential/Empower Sub-Class) All class members who participated in the Plan while Prudential/Empower was the Plan's Recordkeeper.

3. (Injunctive Relief Sub-Class) All class members who currently participate in the Plan.

## III.   ARGUMENT

### A. Congress Established that ERISA Breach of Fiduciary Duty Claims May be Brought as Representative Actions for Plan-Wide Relief

Through ERISA § 502(a)(2), Congress authorized plan participants to bring a civil action for "relief under section 1109." 29 U.S.C. § 1132(a)(2). In turn, ERISA Section 409 establishes that a fiduciary who breaches its duty shall be liable for "any losses to the plan resulting from each such breach," as well as appropriate equitable relief, "including removal of such fiduciary." 29 U.S.C. § 1109(a) (emphasis added).

Congress established these remedies to "protect the entire plan" and guard against "possible misuse of plan assets." *Mass Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 142 (1985).   Thus, Congress authorized participants and other interested parties including the Secretary of Labor to bring claims for breach of fiduciary duty "in a representative capacity on behalf of the plan as a whole" and that "inure[] to the benefit of the plan as a whole." *Id.* at 141, 142 n.9; *see* 29 U.S.C. § 1109(a), § 1132(a)(2).   These claims to protect and benefit a plan are inherently "plan claims." *In re Schering Plough Corp. ERISA Litig.*, 589 F.3d 585, 594 (3d Cir. 2009).   Indeed, to effectuate the purpose of protecting plan participants and beneficiaries of a plan as a whole, Congress expressly authorized them to "seek relief . . . that sweeps beyond

[their] own injury." *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 593 (8th Cir. 2009).

Accordingly, "numerous courts have held" that ERISA breach of fiduciary claims, "are paradigmatic examples of claims appropriate for certification as a Rule 23(b)(1) class." *Schering*, *supra,* 589 F.3d at 604.

Unsurprisingly then, courts routinely certify classes in cases asserting claims of breach of fiduciary duty against 401(k) plan fiduciaries. *See, e.g., Id.* at 589 F.3d at 604; *Munro v. Univ. of S. Cal.*, No. 16-6191-VAP, 2019 WL 7842551, at *8 (C.D. Cal. Dec. 20, 2019); *Marshall v. Northrop Grumman Corp.*, No. 16-6794-AB, 2017 WL 6888281, at *9 (C.D. Cal. Nov. 2, 2017); *In re Northrop Grumman Corp. ERISA Litig.*, No. 06-6213-MMM, 2011 WL 3505264, at *15 (C.D. Cal. Mar. 29, 2011); *Tibble v. Edison Int'l*, No. 07-5359-SVW, 2009 WL 6764541, at *7 (C.D. Cal. June 30, 2009), *aff'd*, 729 F.3d 1110 (9th Cir. 2013), *vacated on other grounds*, 575 U.S. 523 (2015); *Kanawi v. Bechtel Corp.*, 254 F.R.D. 102, 111–12 (N.D. Cal. 2008).

## B. Plaintiffs Meet the Requirement of Rule 23(a)

In order to succeed on a motion for class certification, Plaintiffs must establish the class meets the four prerequisites of Federal Rule of Civil Procedure 23(a)— "numerosity, commonality, typicality, and adequacy"—and that the class "fall[]s within one of the three types specified in Rule 23(b)." *In re Hyundai and Kia Fuel Econ. Litig.*, 926 F.3d 539, 556 (9th Cir. 2019) (en banc).

In evaluating a motion for class certification "the allegations in the complaint are taken as true." *In re En Pointe Techs., Inc. Sec. Litig.*, No. 01CV0205 BEN (AJB), 2005 WL 8173600, at *4 (S.D. Cal. May 31, 2005); *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975). Although a "court's class-certification analysis ... may 'entail some overlap with the merits of the plaintiff's underlying claim . . . Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen Inc. v. Conn. Ret. Plans and Trust Funds*, 568 U.S. 455, 466 (2013) "Merits questions may be considered to the extent—but only to the extent—that they

1   are relevant to determining whether the Rule 23 prerequisites for class certification

2   are satisfied." *Id.*

3       While the Court's analysis must be rigorous, Rule 23 grants the district court

4   "broad discretion to determine whether a class should be certified." *Galvan v. KDI*

5   *Distribution [sic] Inc.*, 2011 WL 5116585, at *3 (C.D. Cal. Oct. 25, 2011) (quoting

6   *Armstrong v. Davis*, 275 F.3d 849, 872 n.28 (9th Cir. 2001)). The Court "need only

7   form a 'reasonable judgment' on each certification requirement." *Id.* (internal

8   citations omitted).

9       A court may certify a class comprised of "subclasses that are each treated as a

10  class." Fed. R. Civ. P. 23(c)(5). "[E]ach subclass must independently meet the

11  requirements of Rule 23 for the maintenance of a class action." *Betts v. Reliable*

12  *Collection Agency, Ltd.*, 659 F.2d 1000, 1005 (9th Cir. 1981).

13      **1.  <u>Numerosity is Met</u>**

14      The class must be "so numerous that joinder of all members is impracticable."

15  Fed. R. Civ. P. 23(a)(1).  "As a general rule, classes of 20 are too small, classes of 20–

16  40 may or may not be big enough depending on the circumstances of each case, and

17  classes of 40 or more are numerous enough." *Dilts v. Penske Logistics, LLC*, 267

18  F.R.D. 625, 632 (S.D. Cal. 2010) (citation omitted).  Proposed classes with hundreds

19  of members clearly satisfy the numerosity inquiry. *Id.* (certifying class of over three

20  hundred members); *Ms. L. v. U.S Immigr. & Customs Enf't*, 331 F.R.D. 529, 536

21  (S.D. Cal. 2018) (numerosity met where "were as many as 700 families that fell

22  within the proposed class.").

23      Here, there is little doubt that numerosity is met as the Plan has had well over

24  10,000 members throughout the relevant time period.  (See, e.g. Exhibits 5 and 6,

25  Form 5500 (Part II, line 5) for Plan Years 2018 and 2021 filed by SWBG, LLC with

26  the Department of Labor ("DOL")).

27      Moreover, numerosity is met as to each subclass as the Plan had over 10,000

28  members during both the 2015-2019 period and the time period from 2020-present.

As to the Injunctive Relief subclass, it is reasonable to conclude that there will still be thousands of class members when injunctive relief is ultimately issued.  *See Sueoka v. United States*, 101 F. App'x 649, 653 (9th Cir. 2004) (when "only injunctive or declaratory relief is sought . . . the numerosity requirement is relaxed so that even speculative or conclusory allegations regarding numerosity are sufficient to permit class certification") (citation omitted).

### 2. **Commonality is Met**

The proposed class must present "questions of law or fact common to the class." Fed. R. Civ. P. 23(a)(2).  This commonality inquiry concerns "the capacity of a classwide proceeding to generate common answers apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). The commonality requirement is "liberally construed." *Marshall*, *supra,* 2017 WL 6888281, at *5. "All questions of fact and law need not be common to satisfy the rule."  *Munro*, *supra,* 2019 WL 7842551, at *3.  Rather, "even a single common question will do." *Alcantar v. Hobart Serv.,* 800 F.3d 1047, 1052 (9th Cir. 2015) (citing Dukes, 564 U.S. at 359).

This standard is easily met in ERISA cases because "[t]he essential question here is whether Defendants breached their fiduciary duties and thereby caused losses to the Plans" *Munro*, *supra,* 2019 WL 7842551, at *4, and "the common focus is on the conduct of Defendants: whether they breached their fiduciary duties to the Plan as a whole by paying excessive fees" and "whether they made imprudent investment decisions," *Kanawi*, *supra,* 254 F.R.D. at 109.

Here, as in other similar ERISA cases, Defendants made investment decisions at the Plan level that affected all participants. Defendants provided the same investment lineup to all participants. (See Exhibits 5 and 6, Forms 5500 2018 and 2021; Schedule H, Part IV, Line 4i)  In constructing that lineup and determining which options to recommend and ultimately retain or remove, Defendants were

subject to Investment Policy Statements which established uniform criteria to be applied to all of the Plan's investments. (Exhibit 4)

Accordingly, there are several central common questions that can be decided in "one fell swoop" to drive resolution of this case. *Kleen Prod. LLC v. Int'l Paper Co.*, 831 F.3d 919, 929 (7th Cir. 2016) (quoting WILLIAM SHAKESPEARE, MACBETH, act 4, sc. 3, l. 220 (David Bevington ed., Pearson Longman 6th ed. 2009)). *See also Dukes*, 564 U.S. at 350 (explaining that common questions resolve issues central to the claims in "one stroke").

Such central common questions include:

(a) whether Defendants are a fiduciaries of the Plan;
(b) whether Defendants breached fiduciary duty of prudence with respect to the Plan;
(c) whether Defendants had a duty to monitor other fiduciaries of the Plan;
(d) whether Defendants breached their duty to monitor other fiduciaries of the Plan;
(e) the proper form of equitable and injunctive relief; and
(f) the proper measure of monetary relief.

(SAC ¶ 260).

The answers to those questions do not depend on the circumstances of any individual class member. Rather, the evidence needed to answer these contentions are Plan-level facts that relate to Defendants' conduct towards the Plan, and thus the answer to the questions will be the same for all Plan participants because Defendants' centralized conduct regarding Plan investments is common to all class members. *Kanawi*, 254 F.R.D. at 110 ("Defendants owed identical fiduciary duties to all members of the proposed class with respect to the Plan. Because this case involves Defendants' conduct as to all participants in the Plan, Rule 23's 'commonality' requirement is satisfied.").

Accordingly, courts in similar ERISA cases routinely find that issues of fiduciary status, breach, and plan losses are common questions. *Schering*, *supra*, 589 F.3d at 596–97 (commonality "clearly satisfied" based on questions of whether

defendants were fiduciaries, whether they breached their duties by failing to monitor and remove imprudent fund, and whether breaches caused plan losses); *Munro, supra,* 2019 WL 7842551, at *4 (finding plaintiffs satisfied "permissive" Rule 23(a)(2) standard by identifying "multiple" common questions of law or fact); *Marshall, supra,* 2017 WL 6888281, at *6 ("The question of whether Defendants breached their fiduciary duties to the Plan are common to all Plan participants' claims and will generate answers common to all of the putative class members."); *Northrop, supra,* 2011 WL 3505264, at *7–("Because plaintiffs have identified multiple questions of fact and law that are common to all plan participants and beneficiaries, the court concludes that they have satisfied the 'permissive' commonality requirement of Rule 23(a)(2).")

This analysis does not differ with respect to the proposed subclasses. Each subclass covers a time period during which the same common questions of Defendants' choices with respect to their management of the Plan.

Accordingly, the commonality factor is met.

**3.  Typicality is Met.**

The typicality inquiry is satisfied when the "claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3).

"The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 984 (9th Cir 2011) (internal quotation marks omitted). "Typicality refers to the nature of the claim or defenses of the class representative, and not to the specific facts from which it arose or the relief sought." *Id.* "Differing factual scenarios resulting in a claim of the same nature as other class members does not defeat typicality." *Id.* at 985 n.9. "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with

1  those of absent class members; they need not be substantially identical." *Parsons v.*
2  *Ryan*, 754 F.3d 657, 685 (9th Cir. 2014) (citation omitted).

3        Rule 23(a)'s commonality and typicality requirements "tend to merge." *Meyer v.*
4  *Portfolio Recovery Assocs., LLC*, 707 F.3d 1036, 1041 (9th Cir. 2012) (quoting *Dukes,*
5  *surpa,* 564 U.S. at 349 n.5). This means "the analysis is similar for both." *Munro,*
6  *supra,* 2019 WL 7842551, at *4.

7        In ERISA breach of fiduciary suits such as this one, Courts in other ERISA
8  defined-contribution plan cases "have overwhelmingly found typicality satisfied in
9  similar circumstances." *Munro*, *supra,* 2019 WL 7842551, at *5 (collecting cases).
10  That is because in these cases, "there was only one course of conduct that occurred:
11  Defendants' management of the Plans."  *Munro*, *supra,* 2019 WL 7842551, at *5.
12  "Any participant's claim that Defendants failed to remove imprudent investments or
13  to negotiate reasonable recordkeeping fees refers to a set of decisions made by
14  Defendants."  The plaintiffs' claims are therefore typical because the "their claims are
15  . . . identical to those of all putative class members and implicate identical injuries and
16  course of conduct."  *Id.  See also Marshall*, 2017 WL 6888281, at *7 ("Given that the
17  focus in ERISA fiduciary breach cases is on the Defendants' conduct, and that the First
18  Amended Complaint specifically alleges plan-wide fiduciary breaches and prohibited
19  transactions, the Court finds the typicality requirement satisfied."); *Northrop*, *supra,*
20  2011 WL 3505264, at *9–13; *Kanawi*, *supra,* 254 F.R.D. at 110 ("In light of the
21  representative nature of a suit filed pursuant to ERISA § 502(a)(2) and the injunctive
22  relief sought … Plaintiffs' claims are sufficiently typical of those of other class
23  members.").

24        Here, the same reasoning applies. The Plaintiffs and all class members are
25  bringing the same claims under the same legal and remedial theory: enforcement
26  through § 502(a)(2) of Defendants' obligations under § 409(a) to make good to the
27  Plan all losses caused by Defendants' breaches of duty and to obtain appropriate
28  equitable relief.

Because Defendants' actions were directed to and affected the Plan as a whole, the claims of Plaintiffs and class members all arise from the same events and course of conduct: Defendants' imprudence in recommending, selecting, and retaining Plan investment options. Defendants determined the Plan's investment options at the plan level, providing the same investment lineup to all participants. (FN 3, *supra*) Thus, all participants were harmed by Defendants' breaches regarding Plan investments, either by investing in imprudent funds, or by being deprived of the opportunity to invest in prudent alternatives that would have been in the Plan if Defendants had fulfilled their duties. Each class member will have to rely on the same evidence to prove Defendants breached their duties and harmed the Plan.

As to each subclass, the Plaintiffs who seek to represent those subclasses have typical claims of the members of the subclass or subclasses they seek to represent. *See Circle Click Media LLC v. Regus Mgmt. Grp. LLC*, 2016 WL 1048046, at *9 (N.D. Cal. Mar. 11, 2016) (subclass representative must be "a member of the subclass he or she seeks to represent").   All of the Plaintiffs were members of the Plan during the time period covered by the MassMutual subclass.  Plaintiff Usselman has been in the Plan throughout the Class Period and continues to invest in the Plan (Usselman Decl. ¶ 2).  Thus, her claims are typical of the Prudential Subclass and the Injunctive Relief Subclass.

Accordingly, typicality is met.

### 4. Adequacy is Met

The final Rule 23(a) factor is whether Plaintiffs "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4).

The adequacy requirement "serves to uncover conflicts of interest between the named parties and the class they seek to represent," and also factors in "competency and conflicts of class counsel." *Hyundai*, *supra,* 926 F.3d at 566 (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 625, 626 n.20 (1997)).

The adequacy determination involves "two questions: (1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hyundai*, *supra,* 926 F.3d at 566 (citation omitted). Mere hypothetical, speculative, or minor conflicts among class members do not defeat class certification. *Cummings v. Connell*, 316 F.3d 886, 896 (9th Cir. 2003).

### a. Plaintiffs have no conflicts with class members and will vigorously prosecute this action

Plaintiffs' interests are aligned with the class members' interests because they all are acting on behalf of their Plan in seeking to enforce the fiduciary duties that Defendants owed to the Plan as a whole and to recover damages and other remedies for the Plan. *See* 29 U.S.C. § 1109(a); *Russell*, *supra,* 473 U.S. at 142 n.9.

Accordingly, there is a general rule that "there is 'a relatively low likelihood of intra-class conflicts in cases of excessive fee claims' because the recovery is to the Plan." *Beach v. JPMorgan Chase Bank, N.A.*, 2019 WL 2428631, at *8 (S.D.N.Y. June 11, 2019) (quoting *Leber v. Citigroup 401(k) Plan Inv. Comm.,*323 F.R.D. 145, 164 (S.D.N.Y. 2017)).

Indeed, because Plaintiffs are pursuing claims on behalf of the Plan and not individual claims, there is no conflict between Plaintiffs' individual interests and the interests of absent class members. *Northrop*, 2017 WL 6888281, at *8 (class representatives interests the same as class because claim is on behalf of Plan and recovery goes to the Plan).

Defendants may argue that Plaintiffs lack sufficient understanding of their claims to represent the Class. But a class representative needs only a basic understanding of the claims and a willingness to participate in the case. *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 373 (1966). "Courts are reluctant … to deny class certification on the basis that the class representatives lack sophistication." *Northrop*, *supra,* 2011 WL 3505264, *14 (citing *Surowitz*, 383 U.S. at 375). Because ERISA

cases are often "legally complex," ERISA plaintiffs need not have detailed knowledge of their claims to satisfy the adequacy requirement. *Id*. It is sufficient if the named plaintiffs can describe their claims in general terms. *Id*. Indeed, even where the plaintiffs lack knowledge of the intricacies of the Plan and their claims, they are adequate if they are "not antagonistic to putative class members and have demonstrated that they are willing to protect the interests of the Class through qualified counsel." *Kanawi*, *supra,* 254 F.R.D. at 111. *See also Northrop*, *supra,* 2011 WL 3505264, at *14 (collecting cases).

Here, as shown in their attached declarations, each Plaintiff understands the general theory of the lawsuit, have been and are prepared to vigorously pursue the claims on behalf of the Class. To wit, each understands that the "lawsuit generally alleges that excessive fees were charged to Plan Participants and that certain investments underperformed." Plaintiffs Decs. ¶ 3. They each understand that they "will represent class members who also participated in the Plan" and that they have duties to those class members. *Id.* ¶¶ 3, 6. They each have actively participated in the litigation, including by producing documents, meeting with their attorneys, providing responses to multiple sets of written discovery. *Id.* ¶ 5. They have each sat for a deposition and are available for future appearances related to this matter, including appearing at trial if necessary. *Id.* Finally, they are not aware of any conflicts of interest or other reason why they may not be adequate class representatives. *Id.* ¶ 4

As noted above, all Plaintiffs are members of the MassMutual subclass, and Plaintiff Usselman is a member of each proposed subclass and can represent all three.

**b. Plaintiffs' counsel has no conflicts with the class, will vigorously prosecute this action on behalf of the class, and should be appointed class counsel.**

When certifying a class, a court must appoint class counsel. Fed. R. Civ. P. 23(g). The court must consider: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (iii)

-15-

counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class.

Christina Humphrey Law, P.C. and Tower Legal Group seek appointment as class counsel.  To date, proposed Class Counsel have leveraged their experience and resources to vigorously pursue recovery on behalf of the Plan and protect the interests of all Class Members, including by comprehensively investigating the claims forming the basis of the Action, working with experts, filing detailed pleadings, opposing motions to dismiss, amending the complaint, and engaging in the discovery process. (Humphrey Decl. ¶¶ 9-15)  No conflicts exist between proposed Class Counsel and the proposed Class.  (*Id.* at ¶ 8)

Christina Humphrey Law, P.C. has filed and litigated several actions across the country involving violations of the Employee Retirement Income Security Act of 1974 ("ERISA").  Ms. Humphrey has practiced almost exclusively in the area of class actions and complex litigation for twenty (20) years, co-chaired class action trials, and been appointed as class counsel in at least 35 cases during her career and involved in many more.  Humphrey Decl. ¶¶ 3-8.  Her colleague, Mr. Fisher, has almost a decade of experience litigating class and collective actions nationwide.  Fisher Decl. ¶¶ 9-11. Tower Legal also has experience litigating class actions. Clark Decl. ¶¶ 11-13.

Class Counsel will continue to leverage their wealth of relevant experience and resources on behalf of the Class through final resolution of this litigation. Accordingly, the Court should appoint Christina Humphrey Law, P.C., and Tower Legal Group as Class Counsel.

### C. Plaintiffs Meet the Requirements of Rule 23(b)

In addition to satisfying the requirements of Rule 23(a), Plaintiffs need only satisfy one subsection of Rule 23(b). *See Amchem*, *supra,* 521 U.S. at 613-14. Plaintiffs ask the Court to certify the proposed class under either Rule 23(b)(1)(A) or

Rule 23(b)(1)(B), as either is appropriate.[4]   Rule 23(b)(1) provides for certification when "prosecuting separate actions by or against individual class members would create a risk of" either "(A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct," or "(B) adjudications with respect to individual class members . . . would be dispositive of the interests of the other members." Fed. R. Civ. P. 23(b)(1). Simply put, "Rule 23(b)(1)(A) considers possible prejudice to a defendant, while 23(b)(1)(B) looks to prejudice to the putative class members." *Kanawi*, *supra,* 254 F.R.D. at 111.

"Certification under Rule 23(b)(1) is particularly appropriate in cases involving ERISA fiduciaries who must apply uniform standards to a large number of beneficiaries." *Foster v. Adams & Assocs., Inc.*, 2019 WL 4305538, at *7 (N.D. Cal. Sept. 11, 2019)

**1.   The Proposed class satisfies Rule 23(b)(1)(A).**

Rule 23(b)(1)(A) covers "cases where the [defendant] is obligated by law to treat the members of the class alike" or "must treat all alike as a matter of practical necessity." *Amchem*, *supra,* 521 U.S. at 614 (citation omitted).

Here, Defendants are obligated to treat the putative class members alike. Indeed it is "the nature of a defined contribution plan" that "a fiduciary must treat participants uniformly" as Defendants make "Plan-level decisions" that affect all participants. *Munro*, *supra,* 2019 WL 7842551, at *8. *See also In re Citigroup Pension Plan ERISA Litig.*, 241 F.R.D. 172, 179 (S.D.N.Y. 2006) (finding Fed. R. Civ. P. 23(b)(1)(A) satisfied "because the defendants have a statutory obligation, as well as a fiduciary responsibility, to 'treat the members of the class alike.'") (citation omitted).

---

[4] Although Plaintiffs do not currently seek such relief, certification would be appropriate under Rule 23(b)(2) and (b)(3) as well.

Inconsistent adjudications on the issue of Defendants fiduciary obligations to the Plan would put them in the "untenable" position of being subject to "differing standards of duty and, thus, differing standards of conduct," thereby leaving Defendants "in limbo" and "making compliance impossible." *Shanehchian v. Macy's, Inc.*, 2011 WL 883659, *9 (S.D. Ohio Mar. 10, 2011).

As to the excessive service provider fees claims, the fact-finder will have to determine the Plans' losses by deciding—with the assistance of expert testimony—how much the recordkeepers were paid, whether the services of all recordkeepers were necessary, and whether the fees were reasonable. *See, e.g., Tussey v. ABB, Inc.*, 2012 WL 1113291, *11–13 (W.D. Mo. Mar. 31, 2012) (calculating damages based on difference between recordkeeping fees paid by the plan each year and the reasonable market rate for the same services).

For the imprudent investment claims, the fact-finder will determine whether Defendants conducted a prudent and thorough investigation of Plan investments on an ongoing basis, whether the options were prudent and reasonably priced, and the proper benchmark alternative to measure losses to the Plans. *See, e.g., Tussey v. ABB, Inc.*, 850 F.3d 951, 959 (8th Cir. 2017) (where fiduciary breached its duty in replacing a fund, the district court must measure the plans' resulting losses).

Injunctive relief may also be appropriate to require removal of certain investment options, a bidding process regarding recordkeeping fees, or other reformation of the Plan. *See, e.g., Tussey*, *supra*, 2012 WL 1113291, *39 (ordering breaching fiduciary to "utilize[] a competitive bidding process … to select a new recordkeeper"); *see also Clark v. Duke Univ.*, 2019 WL 2588029, *3 (M.D.N.C. June 24, 2019) (approving settlement which "obligates Duke to provide considerable non-monetary relief," including the use of an independent consultant and specified investment criteria).

Separate individual adjudications to resolve any one of those issues would create incompatible standards for Defendants as to the amount in losses they must

restore to the Plans under §1109(a) and how to reform the Plans and otherwise remedy Defendants' breaches. Accordingly, numerous courts have recognized that these claims are properly certified under Rule 23(b)(1)(A).  *See, e.g., Munro*, *supra,* 2019 WL 7842551, at *8–9; *Tibble*, *supra,* 2009 WL 6764541, at *7–9; *Kanawi*, *supra,* 254 F.R.D. at 111.

### 2. **The Proposed Class Also Meets Rule 23(b)(1)(B).**

Courts in the Ninth Circuit also routinely certify ERISA class actions under Rule 23(b)(1)(B).  *Munro*, *supra,* 2019 WL 7842551, at *10 (collecting recent cases in which courts granted b(1)(B) certification of ERISA claims); *Northrop*, *supra,* 2017 WL 6888281, at *10 (collecting cases); *Marshall*, *supra,* 2017 WL 6888281, *9–10 (same).

That is because the claims at hand are one of the "[c]lassic example[s]" of Rule 23(b)(1)(B) claims, which include "actions charging 'a breach of trust by an indenture trustee or other fiduciary similarly affecting the members of a large class of security holders or beneficiaries, and which require an accounting or like measures to restore the subject of the trust." *Ortiz v. Fibreboard Corp.*, 527 U.S. 815, 833–34 (1999) (quoting Fed. R. Civ. P. 23, Adv. Comm. Notes, 1966 Amends., subd. (b)(1)(B)). The "shared character of rights claimed or relief awarded entails the risk that any individual adjudication by a class member disposes of, or substantially affects, the interests of absent class members." *Id.* at 834.

In a case involving allegations of breach of fiduciary duties under ERISA § 502(a)(2), "any one participant's claim would, as a practical matter, be dispositive of fellow Plan members because § 502(a)(2) claims must be brought in a representative capacity on behalf of the entire plan, and the relief granted by the Court to remedy the breach of fiduciary duty would inure to the benefit of the plan as a whole, not to the individual plaintiff." *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 144 (S.D.N.Y. 2010).

Case 3:21-cv-01430-RSH-DDL   Document 149-1   Filed 11/01/23   PageID.4472   Page 26 of 26

Here, any single decision as to the plan-wide remedies would impact Plan members across the board.  Accordingly, as in other similar cases, the Court should certify the Proposed Class under Rule 23(b)(1)(B).

Each proposed subclass independently meets the 23(b)(1)(A) and (b)(1)(B) analyses because a decision on behalf of or against any member of that subclass would create an inconsistent standard of conduct for the Defendants with respect to the remainder of that subclass and/or would prejudice the rights of the other subclass members.

## IV.   **CONCLUSION**

For all the foregoing reasons, Plaintiffs Motion for Class Certification should be granted, the requested Class and Subclasses should be defined as set forth herein, the Plaintiffs should be appointed class representatives of the Class and respective subclasses as requested herein, Christina Humphrey Law, P.C. and Tower Legal Group should be appointed class counsel, together with such other and further relief as the Court deems just and proper.

Dated: November 1, 2023

Respectfully submitted,

**CHRISTINA HUMPHREY LAW, P.C.**
**TOWER LEGAL GROUP, P.C.**
**THE SHARMAN LAW FIRM LLC**

*/s/ Christina A. Humphrey*
Christina A. Humphrey
Robert N. Fisher
James A. Clark
Renee P. Ortega
Paul J. Sharman (pro hac vice)
*Attorneys for Plaintiffs*

-20-

PLAINTIFFS' MEMORANDUM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION