1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9          SOUTHERN DISTRICT OF CALIFORNIA
10

11  FERNANDO COPPEL et al., individually    Case No.:  21-cv-1430-RSH-DDL
    and as a representative of a Putative Class
12  of Participants and Beneficiaries on behalf
    of the SWBG, LLC, 401(K) PLAN, f/k/a    **ORDER GRANTING PLAINTIFFS'**
13  "SEAWORLD PARKS AND                      **MOTION FOR PRELIMINARY**
    ENTERTAINMENT 401(K) PLAN,"              **APPROVAL OF CLASS ACTION**
14                                           **SETTLEMENT**
15                            Plaintiffs,    [ECF No. 263]
16  v.
17
    SEAWORLD PARKS &
18  ENTERTAINMENT, INC., et al.,
19                            Defendants.
20
21
22          Pending before the Court is Plaintiffs unopposed motion for preliminary approval of
23  class action settlement. ECF No. 263. For the reasons below, Plaintiffs' motion is granted.
24  **I.    BACKGROUND**
25          Plaintiffs Fernando Coppel, Pablo Martinez, Tyler Mitchell, Judith Uriostegui, and
26  Elizabeth Usselman (collectively, "Plaintiffs") are former employees of SeaWorld Parks
27  and Entertainment, Inc. ("SeaWorld"). ECF No. 105 at 1. Plaintiffs are, or were,
28  participants and beneficiaries of a defined contribution 401(k) retirement savings plan (the

1

"Plan") offered by SeaWorld. *Id.* ¶ 1. On August 9, 2021, Plaintiffs brought this action under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, on behalf of the Plan, individually and as representatives of participants and beneficiaries of the Plan, against: the Plan's former sponsor, SeaWorld; the Plan's current sponsor, SWBG Orlando Corporate Operations Group, LLC ("OCOG"); the Boards of Directors of SeaWorld and OCOG; the Plan's Investment Committee, appointed by the Board; the Board and/or Investment Committee members John Does 1-50; SeaWorld CEO Marc G. Swanson; and former SeaWorld CFO Elizabeth Gulacsy (collectively, "Defendants"). *Id.* ¶¶ 1, 24–30.

After Defendants moved to dismiss, Plaintiffs filed their First Amended Complaint on December 22, 2021, adding Alliant Insurance Services, LLC ("Alliant"), a consulting firm that provides financial advising services to SeaWorld, as a defendant. ECF No. 34. On March 15, 2022, the SeaWorld Defendants and Alliant filed two separate motions to dismiss the First Amended Complaint. ECF Nos. 50, 51. On March 22, 2023, the Court granted in part and denied in part the SeaWorld Defendants' motion to dismiss. ECF No. 84. Additionally, the Court granted Alliant's motion to dismiss and dismissed all claims against Alliant without prejudice. *Id.* at 40. On May 25, 2023, the SeaWorld Defendants moved to amend their pleading. ECF No. 93. After the Court granted Plaintiffs' motion for leave to amend, Plaintiffs filed their Second Amended Complaint (the "SAC"), the operative complaint, on July 21, 2023. ECF Nos. 103, 105.

The SAC asserts two causes of action: (1) breach of the duties of prudence and loyalty, pursuant to 29 U.S.C. §§ 1104(a)(1), 1105(a), 1109(a), 1132(a)(2)–(3), as well as 29 C.F.R. § 2550.404a-1(b); and (2) breach of the duty of prudence for failing to investigate and monitor the Plan's investments and covered service providers, pursuant to 29 U.S.C. §§ 1104(a)(1), 1109(a), 1132(a)(2)–(3). ECF No. 105 ¶¶ 266–81.

On August 21, 2023, the SeaWorld Defendants filed a partial motion to dismiss. ECF No. 112. The Court denied the SeaWorld Defendants' motion. ECF No. 192. On

November 1, 2023, Plaintiffs moved for class certification. ECF No. 149. On May 8, 2024, the Court certified the following class and subclasses:

a.   All participants in or beneficiaries of the SeaWorld Parks and Entertainment 401(K) PLAN, and the SWBG, LLC 401(K) PLAN from August 10, 2015, through the date of judgment, excluding Defendants and members of the Defendant Boards and Committees.

  i.   The MassMutual Subclass: All class members who participated in the Plan while Mass Mutual was the Plan's recordkeeper.

  ii.   The Prudential Subclass: All class members who participated in the Plan while Prudential was the Plan's recordkeeper.

  iii.   The Injunctive Relief Subclass: All class members who currently participate in the Plan.

ECF No. 217 at 41. On September 6, 2024, the Parties notified the Court that they reached a settlement. ECF No. 252. Subsequently, on January 7, 2025, Plaintiffs filed their unopposed motion for preliminary approval of class action settlement that included an attachment of the proposed settlement agreement ("Settlement Agreement"). *See* ECF No. 263, Ex. A. On April 3, 2025, the Court requested supplemental briefing from Plaintiffs regarding the analysis and assumptions underlying Plaintiffs' expert's calculation of potential damages in this action. ECF No. 264. Thereafter, on April 10, 2025, Plaintiffs filed a supplemental declaration detailing their expert's analysis on the valuation of the settlement. ECF No. 265.

## A.   Terms of the Settlement Agreement

The terms of the Settlement Agreement are as follows: the SeaWorld Defendants have agreed to pay a non-reversionary gross settlement amount of $1,250,000. ECF No. 263-2 ¶ 81. The following will be deducted from the gross settlement amount: (1) attorneys' fees, not to exceed 35% of the gross settlement amount, or $437,500; (2) Class Counsel costs, not to exceed $273,000; (3) a Class Representative Service Award of up to $7,500 to Plaintiffs; (4) Settlement Administrative Expenses, not to exceed $17,500; and

(5) recordkeeper costs. After the deductions above, the net settlement amount will be $483,000. Each class member's share will be calculated based on the sum of each class member's account balances for each year of the class period (the "Balance") and then divided by the sum of all class members' Balances. ECF No. 263-1 at 3–4. The agreement provides that members of the class agree to release Defendants from claims arising from this action. ECF No. 236-2 ¶ 1.36.

## II.    LEGAL STANDARD

Rule 23(e) requires court approval of class action settlements. A class action settlement may be approved only based on a finding that the settlement is "fair, reasonable, and adequate." Fed. R. Civ. Proc. 23(e)(2). The settlement proponents ultimately bear the burden to show that the proposed settlement meets this standard. *Staton v. Boeing Co*., 327 F.3d 938, 959 (9th Cir. 2003); *see also Wiley v. Delta Airlines, Inc.,* 930 F.2d 921 (9th Cir. 1991) (quoting *Officers for Justice v. Civil Svc. Comm'n. of the City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)). In requesting preliminary approval of a class settlement, "the parties must provide sufficient information for the court to determine that it 'will likely be able to' grant final approval of the settlement under Rule 23(e)(2)[.]" *Lusk v. Five Guys Enterprises LLC*, No. 1:17-cv-00762-AWI-EPG, 2021 WL 2210724, at *2 (E.D. Cal. June 1, 2021).

Pursuant to the 2018 amendments to Rule 23, the Court considers the following factors in determining whether a class settlement is fair, reasonable, and adequate:

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

(i) the costs, risks, and delay of trial and appeal;

(ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class member claims;

4

(iii) the terms of any proposed award of attorney's fees, including timing of payment; and

(iv) any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2).

## III.  ANALYSIS

### 1. Preliminary Fairness Determination

The Court must first make a preliminary determination as to whether the proposed settlement is "fair, reasonable, and adequate" pursuant to Federal Rule of Civil Procedure 23(e)(2). The Court addresses the applicable Rule 23(e)(2) factors below.

#### a. Adequacy of Representation

Rule 23(e)(2)(A) requires the Court to consider whether "the class representatives and class counsel have adequately represented the class." Fed. R. Civ. P. 23(e)(2)(A). In the Court's Order granting class certification, it found that the adequacy of representation had been satisfied under Rule 23(a)(4). ECF No. 217 at 19–25. The inquiry under Rule 23(a)(4) and Rule 23(e)(2)(A) are similar. *See Kim v. Allison*, 87 F.4th 994, 1000 (9th Cir. 2023) (concluding that a district court's Rule 23(a) inquiry is relevant to its inquiry into "whether a proposed class settlement is fair under the revised Rule 23(e)"). Based on the Court's Order granting class certification, the Parties' briefing, and in the absence of contrary evidence, the Court concludes that the adequacy of representation requirement factor is likely satisfied. *See Cmty. Res. for Indep. Living v. Mobility Works of California*, LLC, 533 F. Supp. 3d 881, 888 (N.D. Cal. 2020) (concluding that plaintiffs and class counsel have adequately represented the settlement class by considering the same adequacy of representation questions that were relevant to class certification); *Victorino v. FCA US LLC*, No. 16CV1617-GPC(JLB), 2023 WL 3296155, at *5 (S.D. Cal. May 5, 2023) (determining that "[b]ecause the inquiry under Rule 23(a)(4) and Rule 23(e)(2)(A) are similar, adequacy of representation is likely met").

5

### b. Arm's Length Negotiation

Rule 23(e)(2)(B) requires the Court to consider whether the proposed settlement was negotiated at "arm's length." Fed. R. Civ. P. 23(e)(2)(B). Here, the Parties engaged in formal discovery, including 10 nonparty subpoenas for the production of documents, depositions of all named Plaintiffs and Defendants' expert witness, production of more than 92,676 pages of discovery. ECF No. 263-2 at 5. Several discovery-related motions were fully litigated and adjudicated. ECF Nos. 147, 157, 158, 248. The Parties conducted extensive investigation, research, and discovery into Plaintiffs' claims. ECF Nos. 263-1 at 12, 263-2 ¶¶ 25–26. Class Counsel are experienced litigators in ERISA lawsuits. ECF No. 263-1 at 12. The Parties settled after extensive discovery and after the Court granted class certification. The terms of the Settlement Agreement were negotiated with "a mediator experienced in ERISA class actions lawsuits involving 401(k) plans." ECF No. 263-1 at 14.

The Court concludes based on the foregoing that the settlement was negotiated at arm's length. *See Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) ("A settlement following sufficient discovery and genuine arms-length negotiation is presumed fair," and "[g]reat weight is accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation."); *Tellez v. Ulta Salon, Cosms. & Fragrance, Inc.,* No. 18CV2480-CAB-LL, 2020 WL 619588, at *5 (S.D. Cal. Feb. 10, 2020) ("Significant factual investigation and discovery allowed Class Counsel—who is experienced in wage-and-hour class-action litigation—to assess the strengths and weaknesses of the claims against Defendant and the benefit of the proposed [s]ettlement.")

### c. Adequacy of Relief

Rule 23(e)(2)(C) requires that the Court consider whether "the relief provided for the class is adequate, taking into account: (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of

attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)[.]" Fed. R. Civ. P. 23(e)(2)(C). The Court addresses these factors.

### i.  Costs, Risks, and Delay of Trial and Appeal

In evaluating the adequacy of a settlement, the Court compares the amount offered with the maximum potential recovery. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000), as amended (June 19, 2000). A "settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *Id.* (citation omitted). Courts "consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation."

Here, the proposed settlement amount is $1.25 million, which Plaintiffs contend represents 11.5% of their maximum potential recovery of approximately $10.8 million. ECF No. 263-2 at 13. Plaintiffs support this figure with a declaration by their counsel regarding their calculation of Plaintiffs' potential recovery in this case. ECF No. 265 ¶ 2.

In calculating their maximum potential recovery, Plaintiffs divide their damages into three categories based on their claims: (1) excessive recordkeeping fees and share class violations; (2) losses to the Plan based on the performance of the Plan's investments; and (3) losses to the Plan related to the switch of the Plan's recordkeeper from Mass Mutual to Prudential. ECF No. 265 at 2–3.

As to the first category, Plaintiffs' expert calculated a maximum potential recovery for excessive recordkeeping fees and share class violations of approximately $1 million. The expert then calculated the difference between the 23-basis point fee charged by Mass Mutual for recordkeeping and the 15-basis point fee Prudential charged when it assumed recordkeeping responsibilities to arrive at a difference of $921,475 or approximately $1 million. *Id.* ¶¶ 3–4.

As to the second category, which concerns the performance of the Plan's investments—specifically the American Century Livestrong Target Date Funds ("One

Choice")—the expert performed a comparative analysis of the One Choice Funds and their replacement, the BlackRock Lifepath Target Date Funds ("Lifepath"). *Id.* at 3. Plaintiffs' expert calculated a total return difference between the One Choice and Lifepath funds of approximately $9 million.

The expert estimated a maximum recovery of $800,000 for the stable value claims related to the switch from Mass Mutual's stable value fund, the Separate Account Guaranteed Investment Account ("SAGIC"), to Prudential's Guaranteed Income Fund ("GIF"), based on the estimated total losses for assets invested from 2021-2023. ECF Nos. 105 at 75, 265 at 2. The Plan transitioned from SAGIC to GIF at the beginning of 2020. Plaintiffs' expert then calculated the difference between the SAGIC and GIC rate of return from 2021 to 2023 to arrive at a difference of $801,040. ECF No. 265 at 4.

Based on these calculations, the settlement amount of $1.25 million equals approximately 11.5% of the maximum potential recovery. This percentage of recovery falls within the range that other courts have accepted in ERISA class action settlements. *See Miguel v. Salesforce.com, Inc.,* 3:20-CV-01753, ECF No. 189 (N.D. Cal. Oct. 11, 2025) (preliminary approval of settlement of approximately 13.5% of the maximum potential recovery in a litigation involving similar claims); *High St. Rehab. v. American Specialty Health Inc.*, No. 12-07243, 2019 WL 4140784, at *12 (E.D. Pa. Aug. 29, 2019) (granting final approval of class action settlement recovery of 11% of the claimed damages).

Although the settlement amount reflects only a portion of Plaintiffs' potential recovery, this discount appropriately accounts for the risk that Plaintiffs here would be left without any recovery. *See Graves v. United Indus. Corp.*, No. 2:17-cv-06983-CAS-SKx, 2020 WL 953210, at *7 (C.D. Cal. Feb. 24, 2020) ("The Settlement eliminates these risks by ensuring Class Members a recovery that is 'certain and immediate, eliminating the risk that class members would be left without any recovery . . . at all.'") (citation omitted).

The Court concludes that the costs and risks of proceeding with litigation likely render the agreed-upon settlement amount adequate relief for the class. *See Fernandez v. Victoria Secret Stores, LLC,* No. CV 06-04149 MMM (SHx), 2008 WL 8150856, at *6

(C.D. Cal. July 21, 2008) ("Because both parties faced extended, expensive future litigation, and because both faced the very real possibility that they would not prevail, this factor supports approval of the settlement."); *Curtis-Bauer v. Morgan Stanley & Co., Inc.,* No. C 06-3903 TEH, 2008 WL 4667090, at *4 (N.D. Cal. Oct. 22, 2008) ("Settlement avoids the complexity, delay, risk and expense of continuing with the litigation and will produce a prompt, certain, and substantial recovery for the Plaintiff class.").

### ii. Effectiveness of Proposed Method of Relief Distribution

Rule 23(e)(2) also requires the Court to consider "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims." Fed. R. Civ. P. 23(e)(2)(C)(ii). "Assessment of a plan of allocation is governed by the same standard of review applicable to the settlement as a whole; the plan must be fair, reasonable, and adequate." *Nobles v. MBNA Corp.*, No. C 06-3723 CRB, 2009 WL 1854965, at *3 (N.D. Cal. June 29, 2009) (citing *Class Pls. v. City of Seattle*, 955 F.2d 1268, 1284–85 (9th Cir. 1992)). A settlement agreement "can be reasonable if it fairly treats class members by awarding a pro rata share to every Authorized Claimant, but also sensibly makes interclass distinctions based upon, inter alia, the relative strengths and weaknesses of class members' individual claims . . . ." *In re Zynga Inc. Sec. Litig.*, No. 12-CV-04007-JSC, 2015 WL 6471171, at *12 (N.D. Cal. Oct. 27, 2015) (quoting *Vinh Nguyen v. Radient Pharms. Corp.*, No. SACV 11-00406 DOC, 2014 WL 1802293, at *5 (C.D. Cal. May 6, 2014)).

Here, class members will not need to submit claims to receive their settlement recovery. Instead, current plan participants and beneficiaries will be identified through Defendants' employment records and automatically sent their settlement payments. ECF No. 263-2 at 11. Each class member's share will be calculated based on the sum of each class member's account balances for each year of the class period and then divided by the sum of all class members' Balances. *Id.* at 4. The Court concludes that the plan of allocation provides equitable treatment to class members. *See Walters v. Target Corp.*, No. 3-16-CV01678-L-MDD, 2019 WL 6696192, at *7 (S.D. Cal. Dec. 6, 2019) (finding "the

effectiveness of the proposed method for processing and distributing the class relief adequate because of its clear processing guidelines"); *Valenzuela v. Walt Disney Parks & Resorts U.S., Inc.*, No. SACV171988JVSDFMX, 2019 WL 8647819, at *8 (C.D. Cal. Nov. 4, 2019).

### d. Attorney's Fees

The Settlement Agreement provides for the payment of attorneys' fees of 35% of the gross settlement amount, not to exceed $437,500. ECF No. 263-1 at 2; Settlement Agreement ¶ 1.3. The Settlement Agreement also establishes that after distribution to the class members, any remaining settlement funds shall be distributed to the *cy pres* recipient, the Pension Rights Center.[1] ECF No. 263-2 at ¶¶ 5.4, 5.6. "While attorneys' fees and costs may be awarded in a certified class action where so authorized by law or the parties' agreement . . . courts have an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *In re Bluetooth Headset Prod. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011). Courts scrutinize settlement agreements for the following signs: (1) "when counsel receive a disproportionate distribution of the settlement;" (2) "when the parties negotiate a 'clear sailing' arrangement" (i.e., an arrangement where defendant will not object to a certain fee request by class counsel); and "(3) when the parties create a reverter that returns unclaimed fees to the defendant." *Allen v. Bedolla,* 787 F.3d 1218, 1224 (9th Cir. 2015) *(*quoting

---

[1]    *Cy pres* is an equitable doctrine that "provides a mechanism for distributing unclaimed funds to the next best class of beneficiaries." *In re Easysaver Rewards Litig.*, 906 F.3d 747, 760 (9th Cir. 2018) (internal quotation marks and citation omitted). "[A] *cy pres* remedy 'account[s] for the nature of the plaintiffs' lawsuit, the objectives of the underlying statutes, and the interests of the silent class members[.]" *Lane v. Facebook, Inc.*, 696 F.3d 811, 819 (9th Cir. 2012) (internal citation omitted). The proposed *cy pres*, the Pension Rights Center is a nonprofit that works to protect the retirement security of workers, retirees, and their families. The Court finds there is a nexus between the Pension Rights Center and the nature of Plaintiffs' claims. *Id.* at 821.

*Bluetooth*, 654 F.3d 935, at 947.) The Ninth Circuit has established 25% of the common fund as the benchmark award for attorney fees. *In re Bluetooth*, 654 F.3d at 942.

The Settlement Agreement includes a "clear sailing" provision stating that "Defendants will take no position with respect to Class Counsel's Application for Attorney's Fees and Expenses and Case Contribution Awards so long as consistent with the terms of the Settlement Agreement." Settlement Agreement ¶ 6.4. "[C]lear sailing provisions 'by nature deprive . . . the court of the advantages of the adversary process' in resolving fee determinations and are therefore disfavored." *In re Bluetooth*, 654 F.2d at 949 (quoting *Weinberger v. Great Northern Nekoosa Corp.*, 925 F.2d 518, 525 (1st Cir. 1991)). The inclusion of a clear sailing provision requires "the district court . . . to peer into the provision and scrutinize closely the relationship between attorneys' fees and benefits to the class, being careful to avoid awarding 'unreasonably high' fees simply because they are uncontested." *Id.* at 948 (citing *Staton v. Boeing Co.*, 327 F.3d 938, 954 (9th Cir. 2003)).

Attorneys' fees in class action settlements can be calculated based on the lodestar or percentage-of-recovery method. *In re Bluetooth*, 654 F.3d at 942. Here, the maximum amount to be sought by Class Counsel is 35% of the common fund, which is higher than the Ninth Circuit's benchmark of 25% when employing the percentage-of-recovery method. *Six (6) Mexican Workers v. Ariz. Citrus Grower*s, 904 F.2d 1301, 1311 (9th Cir. 1990). Plaintiffs' motion does not cite any cases in support of their request for attorneys' fees. The application for attorneys' fees does not appear to establish "special circumstances" warranting a departure from the Ninth Circuit benchmark. *See In re Bluetooth*, 654 F.3d at 942 (finding "courts typically calculate 25% of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure.") (citation omitted); *Six (6) Mexican Workers*, 904 F.2d at 1311 (9th Cir.1990). Preliminary approval of the settlement does not depend on the Court's approval of attorneys' fees. The Court will determine whether the requested fees are reasonable upon final approval of the settlement.

//

### e.  Class Representative Service Award Provision

Rule 23(e)(2) requires the Court to consider whether the settlement proposal treats class members equitably relative to each other. Fed. R. Civ. P. 23(e)(2). "Incentive awards are payments to class representatives for their service to the class in bringing the lawsuit." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013) (citations omitted).  The Settlement Agreement also includes service awards for each class representative. Incentive awards "are discretionary . . . and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 959 (9th Cir. 2009). District courts must "scrutinize carefully the awards so that they do not undermine the adequacy of the class representatives." *Radcliffe v. Experian Info. Sols. Inc.*, 715 F.3d 1157, 1163 (9th Cir. 2013) (citing *Staton v. Boeing Co.,* 327 F.3d 938, 977 (9th Cir. 2003)).

Here, the five Class Representatives each seek a service award of $7,500. ECF No. 263-1 at 2. Plaintiffs' motion does not provide causes justifying this award, and does not establish that the efforts of each named Plaintiff to support the requested awards. The service awards for the Class Representatives are not a barrier to preliminary approval, but the Court will determine whether the service awards requested are reasonable on final approval of the settlement.

### 2.  Proposed Class Notice

Rule 23(e) requires that notice of the proposed dismissal or compromise of a class action shall be given to all members of the class in such manner as the court directs. Fed. R. Civ. P. 23(e). Notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Roes, 1-2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1045 (9th Cir. 2019) (quoting *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974) (to meet the

"constitutional guarantee of procedural due process . . . notice must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections'"). "District courts have broad power and discretion vested in them by [Rule 23] in determining the parameters of appropriate class notice." *Chinitz v. Intero Real Est. Servs.*, No. 18-cv-5623, 2020 WL 7042871, at *2 (N.D. Cal. Dec. 1, 2020) (quoting *Reiter v. Sonotone Corp.*, 442 U.S. 330, 345 (1979)).

Here, the court certified a Rule 23(b)(1) settlement class; as a result, class members do not have the right to opt out of the settlement. Fed. R. Civ. Proc. 23(c)(2) and (c)(3); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011) (Rule 23 "provides no opportunity for (b)(1) or (b)(2) class members to opt out, and does not even oblige the District Court to afford them notice of the action"); *Ticor Title Ins. Co. v. Brown,* 511 U.S. 117, 121, (1994) (noting that Rules 23(b)(1) and (b)(2), do not provide for opt out). Although reasonable efforts must be made to reach all class members, there is no requirement that "each class member actually receive notice." *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 595-96 (N.D. Cal. 2020) (citing *Silber v. Mabon*, 18 F.3d 1449, 1453-54 (9th Cir. 1994)).

### a. Class Notice Administrator

Here, Plaintiffs estimate the class size to be approximately 40,000 potential class members. Plaintiffs propose ILYM Group, Inc. ("ILYM") as the class notice administrator. ECF No. 263-1 at 7. ILYM has extensive experience issuing class action notices and administering class action settlements, including administering settlements with class sizes in excess of 40,000 members, and also including cases in this District. *See id.* at 263-3 at 1, 7; *Sarabri v. Weltman, Weinberg & Reis Co., L.P.A.*, No. 3:10-CV-1777 AJB NLS, 2012 WL 3991734, at *3 (S.D. Cal. Aug. 27, 2012), report and recommendation adopted, No. 10CV1777 AJB NLS, 2012 WL 3809123 (S.D. Cal. Sept. 4, 2012) (appointing ILYM as class settlement notice administrator to disseminate notice to approximately 618,000 class members); *Barani v. Wells Fargo Bank, N.A.*, No. 12CV2999-GPC KSC, 2014 WL

1389329, at *9 (S.D. Cal. Apr. 9, 2014) (appointing ILYM as class settlement notice administrator for a class of approximately 76,000 members). Plaintiffs received estimates from three companies, and ILYM had the most competitive estimate. ECF No. 263-2 at 11–12. The Court determines that ILYM is reasonably suited to administer Plaintiffs' proposed class notice plan, and preliminary appoints ILYM as the class notice administrator.

### b. Notice Plan

Pursuant to the proposed notice plan, within 21 days of the Court preliminary approving the settlement, the Defendants will provide class information to ILYM, the selected Settlement Administrator, consisting of each class member's name, date of birth, final four digits of their social security number, and primary address ("Class Member List"). Settlement Agreement ¶¶ 1.11, 2.8. Defendants will also provide ILYM with an updated Class Member List within 21 days of the Court's Order of the final approval of the settlement. *Id.* ¶ 2.9. ILYM, within 10 days of their receipt of the Class Member List, will send the notice of class action settlement ("Notice") to all class members identified on the Class Member List via First-Class U.S. Mail. *Id.*; ECF No. 263-2 at 67. For notices returned as undeliverable, ILYM will use a national database or other skip-tracing techniques to identify an updated address and promptly re-mail the Notice. ECF No. 263-3 at 4.

The Class Notice Administrator will also create and maintain a case-specific website that will have copies of key documents in the case, contact information for the Class Counsel and Class Administrator, instructions on accessing the case docket on PACER, answers to frequently asked questions, and the Notice. ECF No. 263-1 at 16. The Class Notice Administrator will establish and maintain a toll-free phone number that class members can call to make inquires related to the class action. ECF No. 263-3 at 4.

The Court concludes that the proposed class notice plan is reasonably calculated to reach class members and inform them of the preliminary approval of the class action settlement. The means of notice proposed here have been deemed sufficient. *See Graham v. Cap. One Bank (USA), N.A.*, No. 13-cv-743, 2014 WL 12579809, at *7 (C.D. Cal. July

29, 2014) ("Notice by mail has been found by the Supreme Court to be sufficient if the notice is 'reasonably calculated . . . to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"); *Pipich v. O'Reilly Auto Enters., LLC*, No. 3:21-CV-01120-AHG, 2025 WL 42505, at *4 (S.D. Cal. Jan. 7, 2025) (the court determined that direct mail notice, toll-free number, and a case-specific website provided adequate notice and satisfied the "requirements of Rule 23 and due process").

### c. Notice Content

Turning to the content of the notice, "[n]otice is satisfactory if it 'generally describes the terms of the settlement in sufficient detail to alert those with adverse viewpoints to investigate and to come forward and be heard.'" *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 962 (9th Cir. 2009) (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)). The Court generally concludes that the content of the proposed long form notice, website, and interactive voicemail response script all describe the terms of the settlement in sufficient detail. The Court analyzes their contents, and orders the Parties to revise the website, as explained below.

The Court first addresses the proposed long form notice. The proposed long form notice describes the claims, the class members, and the relief provided under the settlement. ECF No. 263-2, Ex. A at 1–4. The proposed notice provides answers to frequently asked questions relating to the nature of the action, class members' rights, options under the settlement, and the binding effect of a class judgment under Rule 23(b)(1). *See id.* at 1–8. The notice also describes class members' opportunity to object to the settlement and explains that class members do not have an opportunity to opt out. Class members who wish to object to the Settlement Agreement must submit a request in writing to the Court postmarked within 28 calendar days before the Final Approval Hearing and, serve on both counsel all written objections to the Settlement Agreement. In the alternative, class members can object by appearing at the final fairness hearing. The Court concludes that the long form notice is adequate and approves it.

As to the website, the Parties provided a static document with portions of the website's contents, including the URL. Although the proposed website is consistent with the Settlement Agreement, it is missing some additional information that may be helpful to class members, such as the settlement amount and instructions on how to access the case docket. Plaintiffs' motion states: "the website will also provide . . . instructions on how to access the case docket via PACER or in person at any of the court's locations[.]" ECF No. 263-1 at 20. However, the proposed website content does not include such information. Accordingly, the Court orders the Parties to amend the proposed website to include the settlement amount and instructions on how to access the case docket on the landing page of the website.

The Parties propose using a toll-free phone number, listed on the long form notice, to address class members' inquiries by utilizing an interactive voicemail response script ("IVR"), in addition to customer service representatives. The proposed IVR begins with a summary of the lawsuit and a description of the class then the IVR has three options for class members to: (1) hear dates and deadlines related to the settlement agreement; (2) hear how to object to the settlement; or (3) speak to a customer representative. The Court concludes that the proposed IVR is adequate and approves it.

The Court is satisfied that the proposed notice and notice content, subject to the Court's revisions detailed in this Order are reasonably calculated to provide class members with sufficient details of the settlement. The Court therefore approves the proposed notices.

## IV.    CONCLUSION

For the reasons above, the Court:

1. The Court **GRANTS** Plaintiffs' motion for preliminary approval of class action settlement [ECF No. 263] and **PRELIMINARILY APPROVES** the proposed Settlement.

2. The Court **PRELIMINARILY APPOINTS** Christina Humphrey Law, P.C., and Tower Legal Group, P.C. as Class Counsel.

3. The Court **PRELIMINARILY APPOINTS** ILYM Group, Inc. as the Settlement Administrator, pursuant to the terms of the Settlement Agreement.

4. The Court **PRELIMINARILY APPROVES** the appointment of the proposed *cy pres* recipient, The Pension Rights Center.

5. In compliance with the Class Action Fairness Act, 28 U.S.C. § 1715, and as set forth in the Settlement Agreement, the Court **ORDERS** Defendants to serve written notice of the proposed settlement on the U.S. Attorney General, Secretary of the Department of Labor, and the appropriate California state official.

6. The Court **APPROVES** the proposed class notice plan and schedule, pursuant to the terms of the Settlement Agreement.

7. The Court **ORDERS** the Parties to revise the content of the class notice to correct the deficiencies the Court identified in this Order prior to dissemination. The Parties must file the IVR script and amended website content within five (5) days of this Order.

8. The Court **SETS** the Final Approval Hearing for **August 14, 2025** at 1:30 p.m. in Courtroom 3B. Plaintiffs shall file a Motion for Final Approval no later than **June 30, 2025**.

**IT IS SO ORDERED.**

Dated:  May 8, 2025

_____
Hon. Robert S. Huie
United States District Judge

21-cv-1430-RSH-DDL