1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

11
12
13
14
15
16
17
18
19
20
21

FERNANDO COPPEL et al., individually and as a representative of a Class of Participants and Beneficiaries on behalf of the SWBG, LLC, 401(K) PLAN, f/k/a "SEAWORLD PARKS AND ENTERTAINMENT 401(K) PLAN,"

Plaintiffs,

v.

SEAWORLD PARKS & ENTERTAINMENT, INC. et al.,

Defendants.

Case No.:  21-cv-1430-RSH-DDL

**ORDER GRANTING PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**

[ECF No. 270]

22    Before the Court is Plaintiffs' unopposed motion for final approval of class action

23  settlement. ECF No. 270. A final approval hearing was held on August 28, 2025. For the

24  reasons below, the Court grants Plaintiffs' motion and approves the settlement as modified

25  below.

26  **I.    BACKGROUND**

27    On August 9, 2021, Plaintiffs, former employees of SeaWorld Parks and

28  Entertainment, Inc. ("SeaWorld"), filed the instant action under the Employee Retirement

Income Security Act ("ERISA"), 29 U.S.C. § 1001 *et seq.*, on behalf of the SWBG, LLC 401(K) Plan ("the Plan"), a defined contribution 401(k) retirement savings plan offered by SeaWorld. *Id.* at 1. Plaintiffs are, or were, participants and beneficiaries of the Plan. They bring this suit individually and as representatives of participants and beneficiaries of the Plan against: the Plan's former sponsor, SeaWorld; the Plan's current sponsor, SWBG Orlando Corporate Operations Group, LLC ("OCOG"); the Boards of Directors of SeaWorld and OCOG; the Plan's Investment Committee, appointed by the Board; the Board and/or Investment Committee members John Does 1-50; SeaWorld CEO Marc G. Swanson; and former SeaWorld CFO Elizabeth Gulacsy.

Plaintiffs filed their Second Amended Complaint (the "SAC"), the operative complaint, on July 21, 2023. ECF No. 105. The SAC asserts two causes of action: (1) breach of the duties of prudence and loyalty, pursuant to 29 U.S.C. §§ 1104(a)(1), 1105(a), 1109(a), 1132(a)(2)-(3), as well as 29 C.F.R. § 2550.404a-1(b); and (2) breach of the duty of prudence for failing to investigate and monitor the Plan's investments and covered service providers, pursuant to 29 U.S.C. §§ 1104(a)(1), 1109(a), 1132(a)(2)-(3). *Id.* ¶¶ 266-81.

On November 1, 2023, Plaintiffs moved for class certification. ECF No. 149. On May 8, 2024, the Court granted the motion and certified the following class and subclasses:

> All participants in or beneficiaries of the SeaWorld Parks and Entertainment 401(K) PLAN, and the SWBG, LLC 401(K) PLAN from August 10, 2015, through the date of judgment, excluding Defendants and members of the Defendant Boards and Committees
>
> i.   The MassMutual Subclass: All class members who participated in the Plan while MassMutual was the Plan's recordkeeper.
>
> ii.  The Prudential Subclass: All class members who participated in the Plan while Prudential was the Plan's recordkeeper.
>
> iii. The Injunctive Relief Subclass: All class members who currently participate in the Plan.

2

ECF No. 217 at 41-42.

On September 6, 2024, following mediation, the Parties notified the Court that they had reached a settlement. ECF No. 252. On January 7, 2025, Plaintiffs filed their unopposed motion for preliminary approval of class action settlement that included the proposed settlement agreement ("Settlement Agreement"). *See* ECF No. 263, Ex. A. On May 8, 2025, the Court granted preliminary approval of the settlement ("Preliminary Approval Order"). ECF No. 266. The Court preliminarily concluded that the proposed settlement was fair, reasonable, and adequate under the Rule 23(e) factors, and that the Parties' proposed notice plan was "reasonably calculated to reach class members and inform them of the preliminary approval of the class action settlement." *Id.* at 5-12, 14-16.

On July 14, 2025, Plaintiffs filed the instant motion, seeking final approval of the settlement as well as for attorneys' fees, costs, and incentive awards. ECF No. 270. On August 28, 2025, the Court held a final approval hearing. ECF No. 278. No objectors appeared at the hearing.

In consideration for class members releasing their claims against them, SeaWorld Defendants have agreed to pay a non-reversionary gross settlement amount of $1,250,000. Class Counsel estimates that the settlement will yield an average settlement payment of approximately $40 per class member, with the highest settlement payment estimated to be approximately $2,156. ECF No. 270-1 at 10.

## II.    FINAL APPROVAL

### A.    Adequacy of Notice

The Court must determine whether the Class received adequate notice. *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1025 (9th Cir. 1998), overruled on other grounds by *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011). "Adequate notice is critical to court approval of a class settlement under Rule 23(e)." *Id.*

In the Court's grant of preliminary approval, it appointed ILYM Group as the settlement administrator for the action. ECF No. 266 at 17. The Court previously reviewed the method for providing notice and the procedure for class members to object at the

preliminary approval stage and found each to be satisfactory. ECF No. 266 at 14-16. As to the notice content, the Court found the long form notice and the interactive voicemail script to be adequate. *Id.* at 15-16. The Court determined that the proposed website content lacked certain information, including the settlement amount and instructions on how to access the case docket, which the Court directed the Parties to revise. *Id.* at 16. On May 13, 2025, Class Counsel filed a declaration attaching the content of the amended website landing page, reflecting implementation of the Court's directions. ECF No. 267.

In support of final approval, Plaintiffs submit the declaration of Makenna Snow, a Case Manager at ILYM. ECF No. 270-1 at 4 (Snow Decl. ¶ 1). According to Ms. Snow, on May 26, 2025, ILYM received a file from Defendants' counsel, which contained the name, social security number, last known mailing address, last known telephone number, and last known e-mail address for each settlement class member. *Id.* ¶ 5. The class list contained 35,654 individuals. *Id.* ¶ 6. Prior to mailing the notice packets, all 35,654 names and addresses contained in the class list were processed against the National Change of Address ("NCOA") database, maintained by the United States Postal Service ("USPS"), for purposes of updating and confirming the mailing addresses of the settlement class members. *Id.*

Ms. Snow informs the Court that ILYM set up a dedicated toll-free number and website on June 24, 2025. *Id.* at ¶ 7. The website includes general information about the case, relevant court documents, and other details, including the Settlement Agreement and the date of the final approval hearing. *Id.* On June 24, 2025, ILYM mailed the Court-approved notice packets, via U.S first class mail, to all 35,654 individuals contained in the class list. *Id.* ¶ 8. As of August 12, 2025, 5,700 notice packets have been returned to ILYM. ECF No. 276-1 ¶ 3. Of the 5,700 returned notice packets, 4,333 notice packets were re-mailed after ILYM performed a computerized skip trace in an effort to obtain updated addresses. *Id.* ¶ 4. ILYM has deemed 1,368 notice packets undeliverable as no updated addresses were found, despite the skip tracing. *Id.* ¶ 5. As of August 12, 2025, ILYM has not received any objections to the settlement. *Id.* ¶ 6.

Having reviewed Ms. Snow's declaration, the Court concludes that the Class received adequate notice, as required by Rule 23(e).

Additionally, under CAFA, "[n]ot later than 10 days after a proposed settlement of a class action is filed in court, each defendant that is participating in the proposed settlement shall serve upon the appropriate State official of each State in which a class member resides and the appropriate Federal official, a notice of the proposed settlement[.]" 28 U.S.C. § 1715(b). "An order giving final approval of a proposed settlement may not be issued earlier than 90 days after the later of the dates on which the appropriate Federal official and the appropriate State official are served [with notice]." *Id.* § 1715(d); *see California v. IntelliGender, LLC*, 771 F.3d 1169, 1173 (9th Cir. 2014) ("§ 1715 prohibits a court from ordering final approval of a proposed settlement until 90 days after the appropriate government officials were notified.").

Defendants provided a notice of settlement pursuant to CAFA on January 16, 2025, to all appropriate federal and state officials, nine days after the motion for preliminary approval of class action settlement was filed. ECF No. 277 ¶ 5. At the final approval hearing, counsel for Defendants informed the Court that they had not received any objections from any government officials in response to their CAFA notice. The Court finds that Defendants have fully complied with CAFA's notice requirements. 28 U.S.C. § 1715.

## B.    Final Fairness Determination Factors

Federal Rule of Civil Procedure 23(e) provides "[t]he claims, issues, or defenses of a certified class—or a class proposed to be certified for purposes of settlement—may be settled, voluntarily dismissed, or compromised only with the court's approval." Fed. R. Civ. P. 23(e). The Rule "requires the district court to determine whether a proposed settlement is fundamentally fair, adequate, and reasonable." *Hanlon*, 150 F.3d at 1026. In making this determination, the Court is required to "evaluate the fairness of a settlement as a whole, rather than assessing its individual components." *Lane v. Facebook, Inc.*, 696 F.3d 811, 818-19 (9th Cir. 2012).

The Ninth Circuit has instructed that "[a]ssessing a settlement proposal requires the district court to balance a number of factors" including:

> [T]he strength of the plaintiffs' case; the risk, expense, complexity, and likely duration of further litigation; the risk of maintaining class action status throughout the trial; the amount offered in settlement; the extent of discovery completed and the stage of the proceedings; the experience and views of counsel; the presence of a governmental participant; and the reaction of the class members to the proposed settlement.

*Hanlon*, 150 F.3d at 1026. The list is not exhaustive. *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). "The relative degree of importance to be attached to any particular factor will depend upon and be dictated by the nature of the claims advanced, the types of relief sought, and the unique facts and circumstances presented by each individual case." *Id.*

The 2018 amendments to Rule 23 expressly provide guidance as to what factors courts should consider when determining whether a settlement is fair, reasonable, and adequate:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> > (i) the costs, risks, and delay of trial and appeal;
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

6

Fed. R. Civ. P. 23(e)(2). "The factors set forth in Fed. R. Civ. P. 23(e) distill the considerations historically used by federal courts to evaluate class action settlements." *Thompson v. NSC Techs., LLC*, No. 3:20-CV-00371-JO-MSB, 2023 WL 2756980, at *4 (S.D. Cal. Mar. 30, 2023). The Advisory Committee Notes to Rule 23 explain that "[t]he goal of [the] amendment [was] not to displace any factor" that would have been relevant prior to the amendment. Fed. R. Civ. P. 23, Advisory Comm. Notes. Rather, the "goal" was to "focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal." *Id.* "Consideration of the factors the Ninth Circuit has customarily employed remains appropriate after the recent Rule 23 amendments." *Shay v. Apple Inc.*, No. 3:20-cv-1629 JO-BLM, 2024 WL 1184693, at *4 (S.D. Cal. Mar. 18, 2024).

The court's primary concern when reviewing a proposed settlement is "the protection of those class members, [including the named plaintiffs], whose rights may not have been given due regard by the negotiating parties." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101-02 (9th Cir. 2008) (quoting *Officers for Justice v. Civil Serv. Com.*, 688 F.2d 615, 624 (9th Cir. 1982)). "In most situations, unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004). The Court begins with the Rule 23(e)(2) factors and then addresses the additional applicable *Hanlon* factors.

### 1.    *Rule 23(e)(2) Factors*

In its Preliminary Approval Order, the Court evaluated each of the Rule 23(e)(2) factors identified above to determine whether the settlement is fair, reasonable, and adequate. ECF No. 266 at 5-10. The Court determined that the following factors weighed in favor of approval: (1) the adequacy of representation; (2) negotiation at arm's length; (3) the adequacy of relief; and (4) the equitable treatment of class members relative to each other. *Id.* Based on the Court's Preliminary Approval Order, the Parties' briefing, and in

the absence of contrary evidence, the Court reaffirms its previous analysis and conclusions as to these factors.

### 2.    *Additional Hanlon Factors*

#### a.    *Views of Counsel*

"Parties represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995). "Great weight" is thus "accorded to the recommendation of counsel, who are most closely acquainted with the facts of the underlying litigation." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 528 (C.D. Cal. 2004) (quotation marks omitted).

Here, Class Counsel has extensive experience litigating ERISA class actions. Ms. Humphrey and Mr. Clark submitted declarations detailing their experience, as well as Ms. Ortega's experience with ERISA cases. ECF No. 149-2 ¶¶ 3-8; ECF No. 149-4 ¶¶ 11-13. In Class Counsel and defense counsel's view, the settlement reached is fair, reasonable, and adequate. ECF No. 270-1 at 11. This factor weighs in favor of the settlement.

#### b.    *Government Participant*

No government entity participated in this case. This factor is neutral.

#### c.    *Reaction of Class Members*

As of the date of the final approval hearing, one class member, Ms. Kimberly Lynn, has submitted a purported objection to the class action settlement. ECF No. 275. Ms. Lynn states that she does "not want to participate in the Class Settlement or any subsequent Class settlements regarding Sea World, LLC, et al." *Id.* at 1. In substance, this is not an objection to the settlement, but rather a request for exclusion from the settlement. As the Court previously discussed in its order granting preliminary approval, the Court certified a Rule 23(b)(1) settlement class; thus, class members do not have the right to opt out of the settlement. Fed. R. Civ. Proc. 23(c)(2) and (c)(3); *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 362 (2011) (Rule 23 "provides no opportunity for (b)(1) or (b)(2) class members to

opt out[.]"); *Ticor Title Ins. Co. v. Brown*, 511 U.S. 117, 121 (1994) (noting that Rules 23(b)(1) and (b)(2) do not provide for opt out).

The Court only received one purported objection out of the 35,654 class members. ECF No. 275. The Court concludes that the reaction of class members favors granting final approval to the settlement. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (district court had discretion to find a "favorable reaction" to settlement where only 54 objections were received out of 376,301 putative class members); *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming class action settlement where 45 out of approximately 90,000 notified class members objected); *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) ("It is established that the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members.").

### 3. Balancing Factors

"Ultimately, the district court's determination is nothing more than 'an amalgam of delicate balancing, gross approximations and rough justice.'" *Officers for Justice*, 688 F.2d at 625 (citation omitted). The Court's inquiry is ultimately "limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Id.*

On balance, and considering the analysis as set forth herein and in the Preliminary Approval Order, the Court concludes the Settlement Agreement is fair, adequate, and reasonable.

## III.  MOTION FOR ATTORNEYS' FEES, COSTS, AND INCENTIVE AWARD

### A.  Attorneys' Fees and Costs

#### 1. Legal Standard

Federal Rule of Civil Procedure 23(h) permits a court to award reasonable attorneys' fees "authorized by law or by the parties' agreement." Fed. R. Civ. P. 23(h). "[C]ourts have

an independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount." *Bluetooth*, 654 F.3d at 941.

The Ninth Circuit has approved two methods for determining attorneys' fees in cases where the attorneys' fee award is taken from the common fund set aside for the entire settlement: the "percentage of the fund" method and the "lodestar" method. *Vizcaino*, 290 F.3d at 1047. Courts review fee awards in common fund cases with special rigor:

> Because in common fund cases the relationship between plaintiffs and their attorneys turns adversarial at the fee-setting stage, courts have stressed that when awarding attorneys' fees from a common fund, the district court must assume the role of fiduciary for the class plaintiffs. Accordingly, fee applications must be closely scrutinized. Rubber-stamp approval, even in the absence of objections, is improper.

*Id.* at 1052 (internal quotation marks and citation omitted). Ultimately, "[r]easonableness is the goal, and mechanical or formulaic application of either method, where it yields an unreasonable result, can be an abuse of discretion." *In re Coordinated Pretrial Proceedings in Petroleum Prods. Antitrust Litig.*, 109 F.3d 602, 607 (9th Cir. 1997).

### 2. *Percentage of Fund Analysis*

The Court begins with a percentage of fund analysis. Under Ninth Circuit precedent, "[t]wenty-five percent is the 'benchmark' that district courts should award in common fund cases." *In re Pac. Enters. Sec. Litig.*, 47 F.3d 373, 379 (9th Cir. 1995). Here, Class Counsel seeks 35% of the $1.25 million gross settlement amount, totaling $437,500, in fees. ECF No. 270-1 at 4. The Court therefore determines whether it would be appropriate to depart from the Ninth Circuit's benchmark.

A court "may adjust the benchmark when special circumstances indicate a higher or lower percentage would be appropriate." *In re Pac.*, 47 F.3d at 379. The Ninth Circuit has identified several factors relevant in determining if the award is reasonable, including: (1) the results achieved; (2) the risks of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee; (5) the burdens carried by class counsel; and (6) the awards made in similar cases. *See Monterrubio v. Best Buy Stores, L.P.*, 291 F.R.D. 443,

456 (E.D. Cal. 2013). "The overall result and benefit to the class from the litigation is the most critical factor in granting a fee award." *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1046 (N.D. Cal. 2008).

Here, the Court finds that the results achieved are fair to the class, albeit not exceptional. Class Counsel achieved a settlement representing approximately 11.5% of Plaintiffs' estimated maximum potential recovery. ECF No. 270-1 at 9. The settlement will yield an average gross settlement payment of $39.92 per class member, with the highest gross settlement payment estimated to be approximately $2,156. *Id.* at 9-10. Although the recovery to class members is positive, it is not so remarkable as to justify an upward departure. *Reyes v. Bakery & Confectionery Union & Indus. Int'l Pension Fund,* 281 F. Supp. 3d 833, 847, 861 (N.D. Cal. 2017) (finding that an expected recovery of 25% of the maximum damages in an ERISA case was not exceptional).

Nevertheless, as Plaintiffs note, ERISA litigation is risky, and even if Plaintiffs had prevailed on the merits in this case, there was "potential for further litigation . . . and a likely appeal." ECF No. 270-1 at 8; *see Foster v. Adams & Assocs., Inc.*, No. 18-CV-02723-JSC, 2022 WL 425559, at *4 (N.D. Cal. Feb. 11, 2022) ("ERISA is an 'enormously complex' statute, and many ERISA matters also involve facts that are 'exceedingly complicated.'") (quoting *Conkright v. Frommert*, 559 U.S. 506, 509 (2010)).

The Court also looks at the "novelty, difficulty and complexity of the issues involved" in determining whether Plaintiffs' fee request is reasonable. *Marshall v. Northrop Grumman Corp.*, No. 16-CV-6794 AB (JCX), 2020 WL 5668935, at *4 (C.D. Cal. Sept. 18, 2020) (citation omitted). Here, Class Counsel dealt with a complex area of the law and were able to negotiate a settlement prior to what would have been a lengthy trial. ECF No. 270-1 at 17-18; *see Marshall*, 2020 WL 5668935, at *4 ("[ERISA] cases require highly skilled counsel who could understand the complexity of the law and adapt case law accordingly.") (citation omitted).

The Court also takes into account the fact that Class Counsel took this case on a contingent fee basis, advanced costs in the litigation, and litigated the case for about four

years. ECF No. 270-1 at 17-18; *see In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1047 (N.D. Cal. 2008) (finding that counsel litigating the case for over three years and advancing costs supported their request for fees).

Finally, the Court finds that the relatively small size of the common fund in this case supports an upward adjustment. Cases with relatively small funds, that is, under $10 million, will often result in fees above 25%. *See Craft v. Cty. of San Bernardino*, 624 F. Supp. 2d 1113, 1127 (C.D. Cal. 2008) (noting that cases of under $10 million often result in fees above 25%) (citation omitted).

Based on consideration of the above factors, the Court finds it appropriate to award attorneys' fees at 30% of the gross settlement funds. *See, e.g.*, *Downey Surgical Clinic, Inc. v. Optuminsight, Inc.*, No. CV09-5457 PSG (JCX), 2016 WL 5938722, at *10 (C.D. Cal. May 16, 2016) (awarding 30% of the common fund for attorneys' fees in an ERISA class action settlement); *Gamino v. KPC Healthcare Holdings, Inc.*, No. 5:20-CV-01126-SB-SHK, 2023 WL 3325190, at *6 (C.D. Cal. Mar. 11, 2023) (concluding that the attorneys' fees request of 30% of the common fund was reasonable).

### 3. Lodestar Cross Check

The Court next turns to a calculation of the lodestar. "Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award." *Vizcaino*, 290 F.3d at 1050. Class Counsel submitted lodestar calculations of $1,113,376 based on 1493.52 hours of work, and $217,500.00 based on 290 hours of work:

| Timekeeper | Rate | Total Hours | Lodestar |
|---|---|---|---|
| Christina Humphrey | $950.00 | 782 | $742,900 |
| Robert Fisher | $700.00 | 500 | $325,000 |
| Stefano Congedo | $215.00 | 211.52 | $45,476 |
| James Clark and Renee Ortega | $750 | 290 | $217,500 |

| Totals | | 1,783.52 | **$1,330,876** |

ECF Nos. 270-2 at 6, 19; 274.

"In determining a reasonable hourly rate, the district court should be guided by the rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Chalmers v. Los Angeles*, 796 F.2d 1205, 1210-11 (9th Cir. 1986). "Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008). "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate." *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F.2d 403, 407 (9th Cir. 1990).

Here, Class Counsel's hourly rates are commensurate with rates found to be reasonable in this District for attorneys of similar experience levels. *Dexter's LLC v. Gruma Corp.*, No. 23-CV-212-MMA-AHG, 2023 WL 8790268, at *9 (S.D. Cal. Dec. 19, 2023) ("[C]ourts in this District have awarded hourly rates for work performed in civil cases by attorneys with significant experience anywhere in range of $550 per hour to more than $1000 per hour.") (collecting cases). Class Counsel represents that combined, they have spent 1,783.52 hours litigating this action since the original action was filed on August 9, 2021. ECF Nos. 1; 270-2 at 5; 274. In support of their request, Class Counsel additionally submitted supplemental briefing that included billing timesheets. ECF Nos. 272, 274.

The Court has reviewed the timesheets and determines that they support the reasonableness of the Court's award. *Wong v. Arlo Techs.*, No. 5:19-cv-00372-BLF, 2021 WL 1531171, at *11 (N.D. Cal. Mar. 25, 2021) ("[A] multiplier below 1.0 is below the range typically awarded by courts and is presumptively reasonable.").

Based on the Court's consideration of the relevant factors, in addition to the lodestar cross-check, the Court finds that an award of 30% of the settlement amount is appropriate and reasonable in this action. Accordingly, the Court awards attorneys' fees of $375,000.

## B.    Costs

Attorneys are entitled to recover "those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotation marks omitted). Here, Class Counsel requests costs in the amount of $273,540 for "filing fees, runner services, research, mailing costs, travel fees for in person depositions, mediation, and meetings, and most notably expert fees." ECF No. 270-2 (Humphrey Decl. ℙ 10). The Court determines that the request for costs is reasonable in this case. *See Harris,* 24 F.3d at 19 (9th Cir. 1994) (determining that a prevailing plaintiff may be entitled to costs including, among other things, "postage, investigator, copying costs, hotel bills, meals," and messenger services).

## C.    Incentive Award

Although "incentive awards are fairly typical in class action cases," they are discretionary. *Rodriguez*, 563 F.3d at 958. "Generally, when a person joins in bringing an action as a class action he has disclaimed any right to a preferred position in the settlement." *Staton*, 327 F.3d at 976 (internal quotation marks omitted). The purpose of incentive awards, therefore, is "to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general." *Rodriguez*, 563 F.3d at 958-59. Nevertheless, "district courts must be vigilant in scrutinizing all incentive awards to determine whether they destroy the adequacy of the class representatives." *Radcliffe v. Experian Info. Solutions Inc.*, 715 F.3d 1157, 1164 (9th Cir. 2013).

Named Plaintiffs Mr. Coppel, Mr. Martinez, Mr. Mitchell, Ms. Uriostegui, and Ms. Usselman attest that they have spent approximately 40-65 hours each prosecuting this case, performing tasks that include: (1) preparing for and attending their depositions; (2)

participating in meetings with their attorneys; (3) assisting with formal and informal discovery; and (4) providing declarations in support of class certification. ECF No. 270-5-270-9; Coppel Decl. ¶¶ 4-5; Martinez Decl. ¶¶ 4-5; Mitchell Decl. ¶¶ 4-5; Uriostegui Decl. ¶¶ 4-5; Usselman Decl. ¶¶ 4-5. Named Plaintiffs further declare that they believe they undertook a potential risk to their careers by suing their former or current employer. Coppel Decl. ¶ 4; Martinez Decl. ¶ 4; Mitchell Decl. ¶ 4; Uriostegui Decl. ¶ 4; Usselman Decl. ¶ 4.

Here, Plaintiffs request an incentive award in the amount of $7,500 to each named Plaintiff, totaling $37,500 in incentive awards. ECF No. 270-1 at 13. The proposed incentive awards here are significantly more than the average recovery for each class member of approximately $40. *See* ECF No. 270-1 at 10; *Nangle v. Penske Logistics, LLC,* No. 311CV00807CABBLM, 2017 WL 2620671, at *8 (S.D. Cal. June 16, 2017) (finding that awarding a class representative over twenty times more than what the average class member would receive is excessive). In the aggregate, Plaintiffs' Service Awards will amount to more than 3% of the gross settlement amount, which is higher than what some other courts have approved. *See Sandoval v. Tharaldson Emp. Mgmt., Inc.*, No. EDCV 08-482-VAP-OP, 2010 WL 2486346, at *10 (C.D. Cal. June 15, 2010) (collecting cases and finding that plaintiff's request for an incentive award representing one percent of the settlement fund was excessive). For these reasons, the Court determines it is appropriate to reduce each named Plaintiff's incentive award to $5,000.

### D.    Settlement Expenses

Finally, the Court turns to Class Counsel's request to approve $74,500 in settlement administration costs, $1,500 in recordkeeper fees and expenses, and $17,500 in costs for the evaluation of the settlement by an independent fiduciary, Newport Trust Company, LLC ("Newport Trust"). ECF No. 270-1 at 3. The request is supported by Ms. Snow's declaration, which details the work ILYM has undertaken so far and the work it expects to perform in the future. ECF No. 276-1 (Snow Decl. ¶¶ 8-9). Ms. Humphrey's declaration includes the independent fiduciary's report, which details the actions Newport Trust took

in evaluating the settlement. No objections have been made to these expenses. The Court concludes the request is reasonable. *See Johnson v. Fujitsu Tech. & Bus. of Am., Inc.*, No. 16-CV-03698-NC, 2018 WL 2183253, at *7-8 (N.D. Cal. May 11, 2018) (granting motion for final approval of class action settlement that included settlement administration costs and costs for the settlement evaluation by an independent fiduciary); *Ybarra v. Bd. of Trs. of Supplemental Income Tr. Fund*, No. SACV172091JVSEX, 2019 WL 12536179, at *2, 11 (C.D. Cal. Sept. 30, 2019) (approving case-related costs that include settlement administration fees, fees paid to the Plan's recordkeeper, and fees paid to an independent fiduciary).

## IV.  CONCLUSION

In accordance with the foregoing, the court **GRANTS** Plaintiffs' motion for final approval [ECF No. 270] and **APPROVES** the Settlement Agreement as modified herein.

1.  The Court affirms the following certified settlement class and subclasses:

> All participants in or beneficiaries of the SeaWorld Parks and Entertainment 401(K) PLAN, and the SWBG, LLC 401(K) PLAN from August 10, 2015, through September 10, 2025, excluding Defendants and members of the Defendant Boards and Committees.
>
> i.      The MassMutual Subclass: All class members who participated in the Plan while MassMutual was the Plan's recordkeeper.
>
> ii.     The Prudential Subclass: All class members who participated in the Plan while Prudential was the Plan's recordkeeper.
>
> iii.    The Injunctive Relief Subclass: All class members who currently participate in the Plan.

21-cv-1430-RSH-DDL

2. The Court finds that the notice provided to the class members pursuant to the Settlement Agreement and the Order granting preliminary approval of the settlement [ECF No. 266] fully complied with the requirements of Fed. R. Civ. P. 23 and due process, was reasonably calculated to apprise all class members of the pendency of the Action, and of their right to object to the settlement and to appear at the final approval hearing. The Court further finds that the notice complies with 28 U.S.C. § 1715.

3. The Court finds that the requirements of Rule 23(b)(1) of the Federal Rules of Civil Procedure and other laws and rules applicable to preliminary settlement approval of class actions have been satisfied, and the Court approves the Settlement Agreement, as modified herein, as being fair, just, reasonable, adequate, is in the best interests of the class and its members, and fully and finally resolves all such claims.

4. The releases set forth in the Settlement Agreement are binding and effective on all class members as of the date of the entry of this Order.

5. The settlement administrator is hereby directed to implement and carry out the Settlement Agreement and the Plan of Allocation in accordance with the terms and provisions thereof.

6. Within twenty-one (21) calendar days following the issuance of all settlement payments to class members as provided by the Plan of Allocation, the settlement administrator shall prepare and provide to Class Counsel and defense counsel a list of each person who received a settlement payment or contribution from the settlement fund and the amount of such payment or contribution.

7. The Court awards attorneys' fees to Class Counsel in the amount of **$375,000**.

8. The Court awards the payment of costs to Class Counsel in the amount of **$273,540**.

21-cv-1430-RSH-DDL

9.  The Court approves an incentive award to Plaintiffs Fernando Coppel, Pablo Martinez, Tyler Mitchell, Judith Uriostegui, and Elizabeth Usselman in the amount of **$5,000** each.

10. The Court approves settlement administration costs in the amount of **$74,500**; Recordkeeper costs in the amount of **$1,500**; and the costs for the evaluation of the settlement by an independent fiduciary in the amount of **$17,500**.

11. The Court retains jurisdiction over this action as to all matters relating to the administration, consummation, enforcement, and interpretation of the Settlement Agreement and all orders and judgments entered in connection therewith.

12. Except as otherwise set forth in this Order, the Parties shall bear their own costs and attorneys' fees.

13. The Court enters judgment dismissing with prejudice all claims asserted by Plaintiffs and the class members in this action.

**IT IS SO ORDERED.**

Dated:  September 10, 2025

Robert S. Huie
_____
Hon. Robert S. Huie
United States District Judge

21-cv-1430-RSH-DDL